SAMUEL J. STROUD, JR., Plaintiff-Appellant v. PATTIE S. HARRISON, Chief
Judge and PERSON COUNTY DISTRICT COURT, Defendant-Appellees

No. COA98-60

(Filed 1 December 1998)

**1. Disabilities— statute of limitations—visually impaired person—exclusion of assistance dog from courtroom— claims against judge and court—ADA—state statute**

A visually impaired plaintiff's claim for damages against a district court judge and the district court for violations of the Americans with Disabilities Act (ADA) and N.C.G.S. § 168-4.2 based upon the judge's refusal to allow plaintiff to be accompanied by his assistance dog in the courtroom and the judge's chambers was governed by the 180-day statute of limitations set forth in N.C.G.S. § 168A-12. Therefore, the claim was barred by the statute of limitations where the alleged discriminatory conduct occurred on 15 April 1996 and plaintiff filed his complaint in May 1997.

**2. Civil Rights— § 1983 action against judge—monetary damages claim barred**

A visually impaired plaintiff was barred from seeking monetary damages against a district court judge in her official capacity under 42 U.S.C. § 1983 for violations of his civil rights by the judge's alleged refusal to allow plaintiff to be accompanied by his assistance dog in the courtroom and the judge's chambers.

**3. Constitutional Law— State—direct constitutional claim— adequate statutory remedy**

A visually impaired plaintiff had no direct cause of action against a district court judge under N.C. Const. art. I, § 19 based upon the judge's alleged refusal to allow plaintiff to be accompanied by his assistance dog in the courtroom and the judge's chambers since N.C.G.S. Ch. 168A, the Handicapped Persons Protection Act, provided plaintiff with an adequate state remedy.

Appeal by plaintiff from an order entered 9 October 1997 by Judge W. Osmond Smith, III, in Person County Superior Court. Heard in the Court of Appeals 17 September 1998.

*Hollowell, Peacock & Meyer, P.A., by Deborah N. Meyer and Deborah A. Pople, for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Robert M. Curran, Assistant Attorney General, for defendant-appellees.*

McGEE, Judge.

This case arises from an event that occurred 15 April 1996 before defendant Harrison in her capacity as a Person County District Court judge. Plaintiff, who is visually impaired, was in defendant Harrison's courtroom seeking increased visitation with his minor children. He was accompanied by his assistance dog, who sat at plaintiff's feet.

Plaintiff contends and defendant Harrison does not dispute the following: A court bailiff approached plaintiff and informed plaintiff that he would have to remove his dog from the courtroom. Plaintiff told the bailiff that state and federal laws allow him to take his dog anywhere except operating rooms and zoos. The bailiff told plaintiff that defendant Harrison insisted the dog be removed from the courtroom. The bailiff left but returned and escorted plaintiff to defendant

Harrison's chambers, requiring plaintiff to leave his dog outside the chambers. In her chambers, defendant Harrison explained to plaintiff that she had a dog phobia that dated from her childhood.

With regard to increased visitation, defendant Harrison proposed that plaintiff be allowed to visit his children only if a sighted person was with him, stating by way of explanation that she had a five-year-old nephew whom she knew would not survive a few minutes if he were left without a sighted person to watch him. Defendant Harrison further proposed that plaintiff's daughter not be allowed to be in a moving vehicle with plaintiff's dog and that when plaintiff's children visited him, the dog would have to be tied up and left in another room. Defendant Harrison also proposed that the family participate in therapy to deal with fear of dogs, stating by way of explanation that she would have been helped if she had received such therapy during her childhood.

Plaintiff allegedly left the meeting with defendant Harrison with the impression that her proposals were to be part of a court order. However, defendant Harrison never entered an order addressing plaintiff's petition for additional visitation with his children.

In May 1997, plaintiff filed suit against both defendant Harrison in her official capacity and defendant Person County District Court. He alleges that defendant Harrison violated N.C. Gen. Stat. § 168-4.2 (Cum. Supp. 1997), which states, "Every . . . visually impaired person . . . has the right to be accompanied by an assistance dog . . . and has the right to keep the assistance dog on any premises the person . . . uses." Plaintiff also alleges that defendant Harrison violated the North Carolina Constitution, art. I, § 19, in denying plaintiff due process and equal protection under the law by refusing to allow plaintiff to be accompanied by his assistance dog in defendant Harrison's courtroom and chambers. Plaintiff alleges that defendants Harrison and Person County District Court violated 42 U.S.C. § 12101 and related sections (the Americans with Disabilities Act). Plaintiff specifically asserts that defendant Harrison violated the Americans with Disabilities Act by refusing to allow plaintiff to be accompanied by his assistance dog in her courtroom and chambers. Plaintiff asserts that defendant Person County District Court violated the Americans with Disabilities Act through its employees by refusing to allow plaintiff to be accompanied by his assistance dog in defendant Harrison's courtroom and chambers. Plaintiff asserts that defendant Harrison violated 42 U.S.C. § 1983 (Civil action for deprivation of

rights) by denying his right to be accompanied by his assistance dog without due process or lawful authority.

Defendants moved to dismiss the complaint pursuant to N.C.R. Civ. P. 12(b)(2) and 12 (b)(6) for lack of jurisdiction over the person and failure to state a claim upon which relief could be granted. They also contend that the complaint is barred by the doctrines of sovereign immunity, judicial immunity, qualified immunity and the statute of limitations. The trial court granted defendants' motion to dismiss, and plaintiff appeals.

Plaintiff's lawsuit relies heavily on N.C. Gen. Stat. § 168-4.2, which states that visually impaired individuals have the right to be accompanied by an assistance dog. This statute does not, however, waive sovereign or judicial immunity nor does it set forth a statute of limitations or a civil remedy—factors that are crucial to plaintiff's claim. Plaintiff essentially argues that these deficiencies are covered by the umbrella of the North Carolina Constitution, art. I, § 19; 42 U.S.C. § 12101 and related sections (the Americans with Disabilities Act); and 42 U.S.C. § 1983 (Civil action for deprivation of rights).

[1] We begin with an analysis of 42 U.S.C. § 12101 (the Americans with Disabilities Act) and the statute of limitations issue as it relates to this case. The Americans with Disabilities Act (ADA) does not set forth a statute of limitations, but case law provides guidance on what statute of limitations to apply in cases such as the one before us.

> "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." This process involves a two part analysis. In choosing the applicable statute, the court should first select the state statute "most analogous" to the federal claim. The court should then consider whether application of that limitations period is consistent with the federal statute and its underlying policies.

*McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 129 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 1151, 130 L. Ed. 2d 1069 (1995). In *McCullough*, the federal district court held that N.C. Gen. Stat. Chapter 168A is the most analogous state statute to the federal Rehabilitation Act of 1973 (29 U.S.C.A. § 794), noting similarities between the Rehabilitation Act and the ADA, and observing that an ADA filing requirement with respect to the Equal Employment

Opportunity Commission acts as a 180-day statute of limitations for many plaintiffs seeking relief under the ADA. *Id.*

Acknowledging *McCullough,* plaintiff argues that "the closest analogous North Carolina statute to the ADA *based on the cause of action* is N.C. Gen. Stat. § 168 and <u>not</u> N.C. Gen. Stat. § 168-A [sic]." (Emphasis by plaintiff.) Defendants argue that Chapter 168A is more analogous.

To determine whether N.C. Gen. Stat. Chapter 168 or Chapter 168A is more analogous to the ADA in the context of this complaint, we examine the complaint itself, the ADA and the two North Carolina statutory chapters.

Plaintiff's complaint is founded in his allegation that defendants' behavior amounted to discrimination. The eight-page complaint uses the word "discriminate" or a derivative of it at least seventeen times. Some form of the word appears in all five counts set out in the complaint.

The ADA includes the following statement of purpose:

It is the purpose of this chapter—

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C.A. 12101(b) (1995).

N.C. Gen. Stat. Chapter 168, titled "Handicapped Persons," includes the following statement of purpose:

168-1. Purpose and definition.

The State shall encourage and enable handicapped persons to participate fully in the social and economic life of the State and

to engage in remunerative employment. The definition of "handicapped persons" shall include those individuals with physical, mental and visual disabilities. For the purposes of this Article the definition of "visually handicapped" in G.S. 111-11 shall apply. (1973, c. 493, s.1.)

N.C. Gen. Stat. § 168-1 (1995).

N.C. Gen. Stat. Chapter 168 then sets out specific "rights," including the right of access to public places, the right to use public conveyances and other accommodations, and the right to be accompanied by an assistance dog. *See* N.C. Gen. Stat. §§ 168-2 (Cum. Supp. 1997), 168-3 (1995) and 168-4.2 (Cum. Supp. 1997). In fact, Article 1 of Chapter 168 is entitled "Rights."

N.C. Gen. Stat. Chapter 168A, entitled the "Handicapped Persons Protection Act," includes the following statement of purpose:

168A-2. Statement of purpose.

(a) The purpose of this Chapter is to encourage and enable all handicapped people to participate fully to the maximum extent of their abilities in the social and economic life of the State, to engage in remunerative employment, to use available public accommodations and public services, and to otherwise pursue their rights and privileges as inhabitants of this State.

(b) The General Assembly finds that: the practice of discrimination based upon a handicapping condition is contrary to the public interest and to the principles of freedom and equality of opportunity; the practice of discrimination on the basis of a handicapping condition threatens the rights and proper privileges of the inhabitants of this State; and such discrimination results in a failure to realize the productive capacity of individuals to their fullest extent. (1985, c. 571, s. 1.)

N.C. Gen. Stat. § 168A-2(a) and (b) (1995).

N.C. Gen. Stat. Chapter 168A also specifically defines discriminatory practices, waives state immunity and provides for civil action for discriminatory practices. *See* N.C. Gen. Stat. §§ 168A-3, 168A-4, 168A-5, 168A-6, 168A-7, 168A-8 and 168A-11 (1995).

A careful reading of the two chapters reveals that Chapter 168 sets out some specific rights while Chapter 168A sets out the procedure for enforcing those rights. Chapter 168A specifically states,

STROUD v. HARRISON

[131 N.C. App. 480 (1998)]

"[T]he practice of discrimination on the basis of a handicapping condition threatens the rights and proper privileges of the inhabitants of this State[.]" N.C. Gen. Stat. § 168A-2(b). Chapter 168A also specifically states that a handicapped person "may bring a civil action to enforce rights granted or protected by this Chapter[.]" N.C. Gen. Stat. § 168A-11(a). We note the use of the words "enforce" and "discrimination" in both the ADA and N.C. Gen. Stat. Chapter 168A.

We conclude that N.C. Gen. Stat. Chapter 168A is more analogous to the ADA for the purposes of the case at issue. We therefore apply the statute of limitations set out in Chapter 168A, which is "180 days after the date on which the aggrieved person became aware . . . of the alleged discriminatory practice or prohibited conduct." N.C. Gen. Stat. § 168A-12 (1995). The plaintiff in this case was subjected on or about 15 April 1996 to the behavior described above. He filed his complaint in May 1997, outside the 180-day statutory period. We must, therefore, affirm the decision of the trial court to the extent that plaintiff relies on the ADA and N.C. Gen. Stat. § 168-4.2.

[2] Plaintiff's complaint also alleges he has a cause of action under 42 U.S.C. § 1983 (Civil action for deprivation of rights) with regard to defendant Harrison. The statute says, in pertinent part:

§ 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C.A. § 1983 (Cum. Supp. 1998).

Noting that "the interpretation of section 1983 is labyrinthine," our North Carolina Supreme Court specifically addressed § 1983 and claims against state officials in their official capacities in *Corum v. University of North Carolina*, 330 N.C. 761, 770-71, 413 S.E.2d 276, 282-83 (1992). The Court said:

The text of section 1983 permits actions only against a "person." In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 105 L. Ed. 2d 45 (1989), the Supreme Court held that when an action is brought under section 1983 in state court against the State, its agencies, and/or its officials acting in their official capacities, neither a State nor its officials acting in their official capacity are "persons" under section 1983 when the remedy sought is monetary damages. *Accord Quern v. Jordan*, 440 U.S. 332, 59 L. Ed. 2d 358 (1979).

*Corum* at 771, 413 S.E.2d at 282-83 (footnote omitted).

Citing case law from the U.S. Supreme Court, the *Corum* court held that, under § 1983, the plaintiff in that case was barred from seeking damages against state employees in their official capacities. We must apply the same rule in the case before us. Plaintiff has sued defendant Harrison in her official capacity as a district court judge. "Count IV" of plaintiff's complaint specifically cites § 1983 and requests "compensatory damages plus interests[.]" Under § 1983, plaintiff is barred from suing defendant Harrison in her official capacity for monetary damages.

[3] Plaintiff also alleges a violation of the North Carolina Constitution, art. I, § 19, with regard to defendant Harrison. This issue raises the question of whether plaintiff has a direct cause of action under the North Carolina Constitution. Here, too, *Corum* is instructive. "[*I*]*n the absence of an adequate state remedy*, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." *Corum* at 782, 413 S.E.2d at 289 (emphasis added). N.C. Gen. Stat. Chapter 168A provides "an adequate state remedy" for situations such as the one now before us. *Id.* Plaintiff, however, did not use that state remedy and, having failed to do so, cannot now ask this Court to fashion a remedy.

Affirmed.

Judges WYNN and HUNTER concur.

Judge WYNN concurred in the result prior to 1 October 1998.