RICHARD BARDOLPH, SOL JACOBS, AND KATHRYN B. TROXLER, PLAIN-
TIFFS v. STEPHEN G. ARNOLD, COMMISSIONER; W. DEAN DULL, CHAIRMAN
OF THE BOARD OF COMMISSIONERS OF GUILFORD COUNTY; CHARLES R.
FORRESTER, COMMISSIONER; JAMES H. LUMLEY, COMMISSIONER; JACKIE
R. MANZI, COMMISSIONER; JAMES F. KIRKPATRICK, JR., COMMISSIONER;
AND KATIE G. DORSETT, COMMISSIONER, DEFENDANTS

No. 9218SC871

(Filed 5 October 1993)

**Counties § 36 (NCI4th)— information concerning upcoming
referenda — expenditures by county commissioners to produce
and distribute — no liability of commissioners**

As a matter of law, the county commissioners of Guilford
County could not be held personally liable, either at common
law or pursuant to N.C.G.S. § 128-10, for expenditures of Coun-
ty funds used to produce and distribute information concerning
upcoming referenda involving redistricting for the election of
county commissioners and merger of the public schools of
Guilford County.

**Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions § 284 et seq.**

Appeal by defendants from order entered 11 June 1992 by
Judge W. Douglas Albright in Guilford County Superior Court.
Heard in the Court of Appeals 31 August 1993.

The defendants appeal the partial denial of their motion to
dismiss pursuant to North Carolina Rule of Civil Procedure 12(b)(6).
The plaintiffs appeal the partial granting of the defendants' motion
to dismiss on their cross-appeal.

*Vance Barron, Jr. for plaintiff-appellees.*

*Womble Carlyle Sandridge & Rice, by Roddey M. Ligon, Jr.
and Anthony H. Brett, for defendant-appellants Arnold, Dull,
Forrester and Manzi.*

*Pfaff, Elmore & Albright, by J. S. Pfaff, for defendant-appellants Arnold, Dull and Manzi.*

ORR, Judge.

This case arises out of two referenda slated to be voted upon by the voters of Guilford County in the 5 November 1991 election. One involved a redistricting proposal for the election of county commissioners. The other involved the merger or non-merger of the public schools of Guilford County.

On 3 October 1991, at an open meeting, the Board of Commissioners of Guilford County voted to expend county funds for the printing and mailing of two brochures, as well as newspaper advertisements, which addressed the two issues involved in the referenda. All seven commissioners of Guilford County were present for the meeting, including Commissioners Arnold, Forrester, Dull, Manzi, Kirkpatrick, and Dorsett (defendants here); as well as Commissioner Calvin Hinshaw, who is not a defendant. Mr. Hinshaw resigned his office 25 October 1991. Defendant James Lumley was duly appointed as Hinshaw's replacement and sworn into office as a commissioner.

After a heated discussion during the meeting involving the text and possible political overtones of the proposed brochures and advertising, a motion was made by Commissioner Dull to allow preparation of those materials by Commissioner Arnold. The motion was seconded by Commissioners Manzi and Forrester. Commissioners Dorsett and Kirkpatrick voted against the motion. Commissioner Hinshaw voted with the majority.

Subsequent to the meeting, Arnold prepared two pamphlets, entitled "A Look at the Options and Costs Associated With the Referendum to Alter Public School Districts That Appears on the November 5th Ballot" and "Facts You Need To Know About the County Commissioners' Redistricting Plan Before You Vote on November 5, 1991." Additionally, two full-page advertisements were prepared for the major newspapers of Guilford County. The cost of these printings, mailings, and advertisements was in excess of $35,000.00.

The plaintiffs in this case, citizens and residents of Guilford County, filed an action against all the commissioners (except Hinshaw and Lumley) on 31 October 1991, just prior to the local elections.

On 1 November 1991, plaintiffs were granted a preliminary injunction enjoining the commissioners from distributing pamphlets to voters and publishing newspaper advertisements regarding referenda to be voted on in the election, and preventing further expenditures of public funds for dissemination or publishing of the disputed information.

In March 1992, plaintiffs filed an amended complaint which alleged, *inter alia*, that County Commissioners Manzi, Arnold, Dull, and Forrester were personally liable for those public funds spent prior to the November 1 injunction. The amended complaint alleged:

> a) That the expenditures were for a private political purpose. The pamphlets and advertisements were published for the purpose of persuading the voters of Guilford County to cast their votes in a particular way in the referendums on school merger and redistricting that appeared on the ballot in Guilford County in the November 5, 1991 election. No adequate consideration moved to Guilford County. Notwithstanding the knowledge that the expenditures were unlawful, Commissioners Arnold, Dull, Forrester and Manzi willfully and intentionally authorized and approved the disbursement of the public funds of Guilford County with the intent to evade the law. Their actions were a fraudulent, corrupt and malicious misuse of public funds.

Defendants, members of the Board of Commissioners of Guilford County, challenge on appeal the denial of a Motion to Dismiss for failure to state a claim for relief, contending that the trial court erred in ruling that there may be a cause of action at common law against them in their capacity as commissioners. The plaintiffs, all taxpayers of Guilford County, have assigned as error in their cross-appeal the partial granting of the Motion to Dismiss for failure to state a claim, contending that N.C. Gen. Stat. § 128-10 permits an action against municipal officers such as the defendants.

The issue involved in both assignments is whether, as a matter of law, the county commissioners of Guilford County may be held liable, either at common law or pursuant to statutory authority, for expenditures of County funds used to produce and distribute information concerning the referenda in question. At the onset, we note that typically, a denial of a motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), is an interlocutory order from which no appeal may be taken immediately. *State v. School*, 299 N.C. 351, 261 S.E.2d 908, *aff'd on rehearing*, 299 N.C. 731, 265 S.E.2d

BARDOLPH v. ARNOLD

[112 N.C. App. 190 (1993)]

387, *appeal dismissed*, 449 U.S. 807, 101 S.Ct. 55, 66 L.Ed.2d 11 (1980). However, "where a decision of the principal question presented would expedite the administration of justice, or where the case involves a legal issue of public importance, appellate courts may exercise their discretion to determine such an appeal on its merits." *Flaherty v. Hunt*, 82 N.C. App. 112, 113, 345 S.E.2d 426, 427, *disc. review denied*, 318 N.C. 505, 349 S.E.2d 859 (1986), *quoting Stanback v. Stanback*, 287 N.C. 448, 215 S.E.2d 30 (1975) and *Moses v. Highway Commission*, 261 N.C. 316, 134 S.E.2d 664, *cert. denied*, 379 U.S. 930, 85 S.Ct. 327, 13 L.Ed. 342 (1964). The trial court found that the issues addressed in the instant case affected a substantial right of the parties within the meaning of on N.C.G.S. § 1-277, and suspended all further proceedings pending the outcome of this appeal. Therefore, we conclude that while this appeal is interlocutory, we shall, in our discretion, decide the merits in this case.

I.

Addressing initially the common law claim against the commissioners, we find that there is no North Carolina authority which allows for personal liability when elected officials vote to expend funds in the manner described in this case. As the defendants correctly point out, if there is a common law claim such as the one plaintiffs assert, elected officials could potentially risk their personal assets every time they voted on a controversial issue or exercised their political judgment in the expenditure of public funds. For that reason, the General Assembly has enacted specific statutory methods for addressing unlawful actions by elected officials.

The controlling case on this point is *Flaherty, supra.* In *Flaherty*, the plaintiff sued on behalf of the citizens and taxpayers of North Carolina, alleging that then Governor Hunt had improperly used state funds for political campaign purposes in that he used a state-owned aircraft without reimbursing the State. This Court held that "such actions [to recover wrongfully spent public funds] against municipal officers are statutory, the statute providing the basis for the action as well as procedural requirements." *Flaherty*, at 115, 345 S.E.2d at 428. The statutory remedy is ". . . explicit and *exclusive.*" *Id.*, at 116, 345 S.E.2d at 429 (emphasis added). The Court pointed out that the statutory remedy in that case would be N.C.G.S. § 143-32, which provided for a criminal action instituted by the Attorney General against state officials who wrongfully divert funds for their own purposes. Therefore, for plain-

tiffs to pursue the Commissioners in this case, they must rely upon a specific statutory cause of action as discussed in Part II of this opinion.

The authorities cited by the plaintiffs are not dispositive here, as those cases deal with knowing disregard or intentional circumvention of statutory requirements or actions by the board in absence of statutory authority. In *Horner v. Chamber of Commerce*, 231 N.C. 440, 57 S.E.2d 789 (1950), taxpayers sued the City of Burlington for distributing budget funds directly to the Chamber of Commerce, to be used for its day-to-day activities. *Brown v. Walker*, 188 N.C. 52, 123 S.E. 633 (1924), involved the town of Sylva's appropriation of $5,000.00 to a trustee for the purchase of rights-of-way for the construction of a railroad, while *Moore v. Lambeth*, 207 N.C. 23, 175 S.E. 714 (1934), involved intentional and illegal circumvention of bidding requirements in order to award a contract to a specific construction company.

All of the above cited cases involved a third party's receipt of public funds, either without authorization or in direct violation of statute, rather than distribution of information to the public. In both *Brown* and *Horner, supra*, the recipients of the public funds were party defendants along with the municipal officers. In *Moore*, there were clear indications of criminal activity intended to avoid statutory bidding requirements.

Finally, the courts of North Carolina have determined that lobbying by local government to create support for local issues is permissible. *North Carolina ex rel. Horne v. Chafin*, 62 N.C. App. 95, 302 S.E.2d 281, *aff'd*, 309 N.C. 813, 309 S.E.2d 239 (1983), *appeal dismissed*, 466 U.S. 933, 104 S.Ct. 1902, 80 L.Ed.2d 452 (1984), involved lobbying of the state legislators by the City of Charlotte and the County Commissioners of Mecklenburg County. The taxpayer plaintiff objected to the expense of a reception held to present local issues and interests to the Legislature. This Court pointed out "[u]rging policies which benefit their constituents is one of the ways local officials promote their constituents' interests." *Horne*, 62 N.C. App. at 98, 302 S.E.2d at 284. If there is political disagreement as to what expenditures would promote the constituents' interest, "[p]laintiff's remedy is to air his opinion at the ballot box." *Id.*

We therefore conclude that the commissioners were vested with appropriate authority to expend the funds in question and

plaintiffs' allegations that the information provided was slanted for political purposes does not sufficiently state a claim for relief. Likewise, the memorandum from the county attorney which states that ". . . such expenditure is lawful so long as the expenditure for this purpose is for publicity that is informational in nature and does not advocate one position over another . . ." did not say that the proposed brochures were illegal. Plaintiffs' contention that the commissioners circumvented the law because they allegedly ignored the advice of the county attorney is therefore without merit. Accordingly, the trial court's denial of the defendants' motion to dismiss the common law complaint is reversed.

II.

Plaintiffs contend on cross-appeal that the Commissioners of Guilford County may be held liable for their actions pursuant to N.C. Gen. Stat. § 128-10. We find that the aforementioned statute has no applicability to the facts of this case and accordingly affirm the trial court's decision.

N.C. Gen. Stat. § 128-10 states in pertinent part that

[w]hen an official of a county, city or town is liable upon his bond for unlawfully and wrongfully retaining by virtue of his office a fund, or a part thereof, to which the county, city or town is entitled, any citizen and taxpayer may, in his own name for the benefit of the county, city or town, institute suit and recover from the delinquent official the fund so retained. Any county commissioners, aldermen, councilmen or governing board who fraudulently, wrongfully or unlawfully permit an official so to retain funds shall be personally liable therefor . . . .

Without an official who is "liable on his bond", as well as commissioners who refuse to take action against that official, no action arises under this section. The statute specifically identifies the narrow circumstances and persons that could be held liable for retaining funds by virtue of their office, and only allows for liability on the part of commissioners when and if they fail to recover the wrongfully held funds from the bonded officer.

The section does not create an initial cause of action against commissioners, but rather establishes a derivative remedy, requiring both retained funds by a bonded officer and refusal to act by commissioners. The allegations and the pleadings indicate that

neither of these factors are present in the instant case, therefore, dismissal was proper pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6), for failure to state a claim for which relief can be granted.

For the above stated reasons, we affirm the decision of the trial court with respect to the granting of defendant's motion to dismiss the plaintiff's claim pursuant to N.C.G.S. § 128-10, and reverse his denial of the motion to dismiss the common law claim. We accordingly remand for an entry of judgment dismissing the complaint.

Affirmed in part, reversed and remanded in part.

Chief Judge ARNOLD and Judge WELLS concur.