SEAN FARRELL, A MINOR BY AND THROUGH HIS PARENTS AND LEGAL GUARDIANS, WILLIAM FARRELL, INDIVIDUALLY; AND SUZANNE FARRELL, INDIVIDUALLY, PLAINTIFFS V. TRANSYLVANIA COUNTY BOARD OF EDUCATION; TERRY HOLLIDAY, FORMER SUPERINTENDENT OF TRANSYLVANIA COUNTY SCHOOLS IN HIS OFFICIAL CAPACITY; PATRICIA MORGAN, FORMER PRINCIPAL OF BREVARD ELEMENTARY SCHOOL, IN HER OFFICIAL CAPACITY; RON KIVINIEMI, FORMER ASSISTANT PRINCIPAL OF BREVARD ELEMENTARY AND PRINCIPAL OF PISGAH FOREST ELEMENTARY SCHOOL IN HIS OFFICIAL CAPACITY; KATHY HAEHNEL, DIRECTOR OF FEDERAL PROGRAMS AT TRANSYLVANIA COUNTY SCHOOLS IN HER INDIVIDUAL AND OFFICIAL CAPACITIES; DONNA GARVIN, FORMER SPECIAL EDUCATION TEACHER AT REVARD ELEMENTARY IN HER INDIVIDUAL AND OFFICIAL CAPACITIES; AND JANE WOHLERS, FORMER TEACHER'S AIDE AT BREVARD ELEMENTARY SCHOOL IN HER INDIVIDUAL AND OFFICIAL CAPACITIES, DEFENDANTS

No. COA05-882

(Filed 7 February 2006)

### 1. Appeal and Error— appealability—denials of motion to dismiss—immunity and punitive damages

Assignments of error concerning the denials of defendants' motions to dismiss in an action arising from the alleged abuse of a disabled student in a public school were dismissed as interlocutory, except for assignments of error pertaining to immunity and the related issue of punitive damages.

### 2. Immunity— public official—conclusory affidavit—not sufficient

A conclusory affidavit that a public official acted willfully and wantonly is not sufficient by itself to overcome public official immunity. Defendant Haehnel, director of federal programs in the Transylvania County Schools, qualifies as a public official given that she performs discretionary acts involving personal deliberation, decision, and judgment in a position created by the statutes of North Carolina.

### 3. Immunity— qualified—public official—personal liability

The trial court erred by denying a motion by defendant Haehnel, director of federal programs in the Transylvania County Schools, to dismiss claims asserted against her under 42 U.S.C. § 1983 in her individual capacity. Plaintiff's allegations do not establish any conduct by Haehnel that violated clearly established statutory or constitutional rights. Qualified immunity protects public officials from personal liability for performing official discretionary functions if the conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

FARRELL v. TRANSYLVANIA CTY. BD. OF EDUC.

[175 N.C. App. 689 (2006)]

Appeal by defendants from order entered 14 March 2005 by Judge J. Marlene Hyatt in Transylvania County Superior Court. Heard in the Court of Appeals 11 January 2006.

*The Law Office of Stacey B. Bawtinhimer, by Stacey Bawtinhimer, and Dixon, Doub, Conner & Foster, P.L.L.C., by Jeffery B. Foster, for plaintiffs-appellees.*

*Cranfill, Sumner & Hartzog, L.L.P., by Ann S. Estridge and Meredith T. Black, for defendant-appellant Kathy Haehnel.*

*Roberts & Stevens, P.A., by Christoper Z. Campbell and Cynthia S. Grady, and Northup & McConnell, P.L.L.C., by Isaac N. Northup, Jr. and Elizabeth McConnell for joint defendants-appellants.*

*Tharrington Smith, L.L.P., by Ann L. Majestic and Deborah R. Stagner, and North Carolina School Boards Association, by Allison B. Schafer, for Amicus Curiae North Carolina School Boards Association.*

CALABRIA, Judge.

Transylvania County Board of Education *et al.* ("defendants") and defendant Kathy Haehnel ("Haehnel") appeal from an order of the trial court, which denied, in pertinent part, their motions to dismiss. We dismiss, as interlocutory, the appeal of all defendants except Haehnel, and we reverse the trial court's denial of Haehnel's motion to dismiss.

The complaint alleged, *inter alia*, the following facts:

18. The Plaintiff Sean Farrell began attending the public schools of Transylvania County in the fall of 1998. Sean has cerebral palsy, developmental delay, and other disabilities which qualify him as a student with special needs. Sean's condition prevents him from communicating verbally. He has limited ability to use sign language. As a result of these special needs, Sean was placed in a specialized educational environment within the Defendant School Board's school system.

. . .

20. At the beginning of the 2001-2002 school year, Sean was placed in a self-contained classroom at Brevard Elementary School and Sean's classroom teacher was Defendant Garvin. In

addition to Defendant Garvin, the classroom has three teacher's aides, two of which were Defendant Wohlers and Eva Grey.

21. Unlike some of the disabled students in Defendant Garvin's classroom, Sean was able to independently feed himself and enjoyed all varieties of food. He was, according to Defendants Garvin and Wohlers, a good eater, liked all kinds of foods, and would always clean his plate.

22. At the time Sean began attending school and through August, 2001, he functioned well within the program, and was a happy, healthy child, but for his special needs.

23. The Plaintiffs had noticed some occasional behavior changes in Sean the spring of 2001[.] [T]hese behaviors disappeared during summer school when Defendant Wohlers was not in Sean's classroom.

24. Initially during the 2001-2002 school year, Defendant Wohlers was absent due to a surgical procedure, and missed approximately the first 30 days of school.

. . .

27. Within days of Defendant Wohlers['] [return to work] in Sean's class, the Plaintiffs William and Suzanne Farrell began noticing immediate changes [in] Sean's behavior reminiscent of those which occurred in the spring

. . .

31. . . . [S]ean became depressed, became severely withdrawn, and anxious, fearful of food. Sean would cling to his mother and cry when going to school. This behavior was unusual in that Sean had always loved and enjoyed going to school.

. . .

36. The Plaintiffs were eventually told by Eva Grey, the other teacher's aide in Sean's classroom, that Sean was being treated abusively by the Defendant Wohlers. This abuse included:

a. being force fed by Wohlers at times to the point of choking on a regular basis;

b. Wohlers yelling at him and using abusive language;

c. his head being jerked back violently and hair being pulled while his face was being washed; and

d. Defendant Wohlers using a stuffed animal she knew that Sean was terrified of to intimidate him to stay on his mat for naptime.

37. Eva Grey informed the Plaintiffs that she had notified Defendant Haehnel about her disclosures to the Plaintiffs two days before[] the Plaintiffs contacted interim principal Susan Allred.

. . .

39. Defendant Haehnel and Susan Allred were assigned to the investigation and informed the Plaintiffs that they would conduct a thorough investigation of the alleged abuse.

40. After Defendant Haehnel investigated the allegations of Eva Grey that Defendant Wohlers abused Sean, she informed the Plaintiffs that Eva Grey had made up these allegations because she was jealous of Defendant Wohlers and wanted her job. Moreover Defendant Haehnel indicated that no other individual had substantiated Eva Grey's allegations and that Defendant Wohlers was exonerated.

. . .

45. Defendant Haehnel's investigation file documented that other school personnel and outside staff had complained about Defendant Wohlers' abusive behavior towards disabled students and inappropriate conduct; that Defendant Garvin's classroom was not properly supervised; and that Defendant Wohlers based on Defendant Haehnel's own personal observations acted inappropriately towards students in Defendant Garvin's classroom.

46. Teacher's aide, Roxanne Jones, who also worked in the self-contained classroom witnessed Defendant Wohlers, in the presence of Defendant Garvin, and under the authority, direction or control of Defendants Garvin, Morgan, Kiviniemi, Holliday, and the School Board:

a. yell at the children;

b. tell them to "shut up";

c. pinch them behind their ears causing bruises;

d. squeeze them under the arms causing bruises;

e. stuff food into students' mouths;

**FARRELL v. TRANSYLVANIA CTY. BD. OF EDUC.**

[175 N.C. App. 689 (2006)]

f. hold their head in a headlock, continue to stuff food into students' mouths until they gagged during which time one student projectile vomited;

g. verbally intimidate the children by yelling at them until they broke down crying;

h. hold their foreheads roughly and yank their heads back in order to wash their face in the bathroom; and,

i. made inappropriate sexual and lewd comments in front of the children.

. . .

67. Sean's condition became so severe that he was admitted to Mission Hospital from January 16 to January 24, 2002 for IV therapy and a thorough medical workup to find a cause for his severe anxiety associated with food.

. . .

71. These tests indicated that there was no physical reason for Sean's failure to eat and drink. The attending pediatric physician and residents from Mission Hospital, including the gastro-intestinal doctor and occupational therapists all agreed that Sean's eating problems were consistent with severe anxiety and depression due to suspected child abuse in the classroom.

. . .

82. Defendant Wohlers was subsequently terminated by Transylvania County Schools in part because of more abuse allegations of another disabled student and a pattern of inappropriate conduct towards students.

83. After several months, Sean was placed back in Defendant Garvin's classroom with his familiar peers, routine, and staff. Defendant Wohlers was no longer an aide in Sean's classroom and he started eating again.

. . .

85. Plaintiffs are informed and believe, and therefore allege, that the above described ongoing pattern and practice of physical and verbal abuse, by definition, are not appropriate to achieve educational goals, and they instead result in lasting and irreparable damage to Plaintiff Sean Farrell and violated his property

right to a public education as guaranteed by the North Carolina Constitution.

Based on these allegations and others, Suzanne and William Farrell (collectively "plaintiffs") filed suit individually and on behalf of the minor child Sean Farrell ("Sean") against defendants. In their complaint, plaintiffs asserted causes of action for negligent supervision, negligent hiring and retention, negligent infliction of emotional distress, and violation of substantive due process under 42 U.S.C. § 1983. The plaintiffs also sought punitive damages. The Transylvania County Board of Education filed a motion to dismiss, covering all defendants sued in their "official capacities" and Donna Garvin ("Garvin"). Defendants Haehnel and Jane Wohlers ("Wohlers") also filed motions to dismiss claims against them in their individual capacities. The trial court granted motions to dismiss the punitive damages claims against the School Board and any defendant sued in his or her official capacity. As to all other claims, the trial court denied defendants' motions to dismiss. From the denial of these motions, defendants appeal.

[1] Plaintiffs have filed a motion to dismiss, as interlocutory, the entire appeal of the joint defendants and the appeal of Haehnel except for the issues of public official and qualified immunity. Generally, "a denial of a motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6)[], is an interlocutory order from which no appeal may be taken immediately." *Bardolph v. Arnold*, 112 N.C. App. 190, 192-93, 435 S.E.2d 109, 112 (1993) (citation omitted). However, "[o]rders denying dispositive motions based on public official's immunity affect a substantial right and are immediately appealable." *Summey v. Barker*, 142 N.C. App. 688, 689, 544 S.E.2d 262, 264 (2001). A substantial right is affected because "[a] valid claim of immunity is more than a defense in a lawsuit; it is in essence immunity from suit. Were the case to be erroneously permitted to proceed to trial, immunity would be effectively lost." *Slade v. Vernon*, 110 N.C. App. 422, 425, 429 S.E.2d 744, 746 (1993), *implied overruling based on other grounds, Boyd v. Robeson County*, 169 N.C. App. 460, 621 S.E.2d 1 (2005). Accordingly, we address Haehnel's assignments of error pertaining to immunity and the related issue of punitive damages; however, we decline to address the other defendants' assignments of error, given that they are interlocutory. *Houpe v. City of Statesville*, 128 N.C. App. 334, 340, 497 S.E.2d 82, 87 (1998) (standing for the proposition that when this Court addresses a matter, although interlocutory, because it affects a substantial right, it is in our discretion whether to address other arguments not affecting a substantial right).

**FARRELL v. TRANSYLVANIA CTY. BD. OF EDUC.**

[175 N.C. App. 689 (2006)]

**[2]** On appeal, Haehnel argues that the trial court erred in denying her motion to dismiss as to the negligence claims because "the face of plaintiffs' complaint reveals an insurmountable bar to recovery as the allegations establish that Dr. Haehnel, a public official, is immune from plaintiffs' claims." We agree that Haehnel is immune from plaintiffs' negligence claims in her individual capacity under the doctrine of public official immunity.

On appeal from a motion to dismiss under Rule 12(b)(6), this Court reviews *de novo* "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted." *Harris v. NCNB Nat. Bank of North Carolina*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). We consider the allegations in the complaint true, construe the complaint liberally, and only reverse the trial court's denial of a motion to dismiss if plaintiff is entitled to no relief under any set of facts which could be proven in support of the claim. *Hyde v. Abbott Laboratories., Inc.*, 123 N.C. App. 572, 575, 473 S.E.2d 680, 682 (1996).

Under the doctrine of public official immunity, "[w]hen a governmental worker is sued individually, or in his or her personal capacity, our courts distinguish between public employees and public officials in determining negligence liability." *Hare v. Butler*, 99 N.C. App. 693, 699-700, 394 S.E.2d 231, 236 (1990) (citations omitted). "Officers exercise a certain amount of discretion, while employees perform ministerial duties." *Cherry v. Harris*, 110 N.C. App. 478, 480, 429 S.E.2d 771, 773 (1993) (citation omitted). "Discretionary acts are those requiring personal deliberation, decision[,] and judgment. . . . Ministerial duties, on the other hand, are absolute and involve merely the execution of a specific duty arising from fixed and designated facts." *Isenhour v. Hutto*, 350 N.C. 601, 610, 517 S.E.2d 121, 127 (1999) (citations and quotations omitted). Additionally, "[t]o constitute an office, as distinguished from employment, it is essential that the position must have been created by the constitution or statutes of the sovereignty, or that the sovereign power shall have delegated to an inferior body the right to create the position in question." *State v. Hord*, 264 N.C. 149, 155, 141 S.E.2d 241, 245 (1965).

Under these guidelines, this Court has recognized that school officials such as superintendents and principals perform discretionary acts requiring personal deliberation, decision, and judgment. *Gunter v. Anders*, 114 N.C. App. 61, 67-68, 441 S.E.2d 167, 171 (1994). We now consider the issue of first impression, whether a school official serving in a supervisory role, other than a superintendent or

school principal, qualifies as a public official. Specifically, we consider whether Haehnel's role as Director of Federal Programs qualifies her as a public official. The complaint in the case *sub judice* acknowledges that Haehnel is the Director of Federal Programs for Transylvania County schools and has the responsibilities of "ensuring that students with disabilities in the School System are treated in compliance with the requirements of state law and the North Carolina Constitution" and "supervising all special education teachers, aides in special education classrooms, and related service providers in the entire special education program for *Transylvania County Schools.*" Accordingly, Haehnel qualifies as a "school administrator" under N.C. Gen. Stat. § 115C-287.1(a)(3) (2005). "School administrator[s]" include principals, assistant principals, supervisors, and directors "whose major function includes the direct or indirect supervision of teaching or of any other part of the instructional program." *Id.* Given that Haehnel performs, within her supervisory role, discretionary acts involving personal deliberation, decision, and judgment in a position created by the statutes of our State, we hold that she is a public official who qualifies for public official immunity.

Our Supreme Court has said:

> It is settled law in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto. The rule in such cases is that an official may not be held liable unless it be alleged and proved that his act, or failure to act, was corrupt or malicious . . . or that he acted outside of and beyond the scope of his duties.

*Smith v. Hefner,* 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952) (citations omitted). Moreover, "a conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts alleged in the complaint must support such a conclusion." *Meyer v. Walls,* 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997). *See also Dalenko v. Wake County Dept. of Human Services,* 157 N.C. App. 49, 56, 578 S.E.2d 599, 604 (2003) (holding a complaint's allegations amounted to conclusions of law and deductions of fact and were insufficient to overcome public official immunity). The only allegation that plaintiffs made regarding Haehnel acting with corruption, maliciousness, or beyond the scope of her duties is found in the 42 U.S.C. § 1983 portion of the complaint. The allegation stated, "The actions of

**FARRELL v. TRANSYLVANIA CTY. BD. OF EDUC.**

[175 N.C. App. 689 (2006)]

Defendants, as described above, were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Plaintiff." This allegation is conclusory and insufficient to overcome Haehnel's public official immunity. *See Meyer, supra.* Accordingly, the trial court erred in denying Haehnel's motion to dismiss the negligence claims against her in her individual capacity.

**[3]** In regard to the 42 U.S.C. § 1983 claims, Haehnel argues that she is immune from suit in her individual capacity under the theory of qualified immunity. "Qualified immunity protects public officials from personal liability for performing official, discretionary functions if the conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vest v. Easley*, 145 N.C. App. 70, 75, 549 S.E.2d 568, 573 (2001) (citations omitted). Assuming *arguendo* that plaintiffs properly pled its claim for relief pursuant to 42 U.S.C. § 1983, plaintiffs' allegations, nonetheless, fail to establish any conduct by Haehnel that violated clearly established statutory or constitutional rights. Accordingly, we hold that the trial court erred in denying Haehnel's motion to dismiss the claims asserted against her under 42 U.S.C. § 1983 in her individual capacity.

Because Haehnel is entitled to public official immunity as to the negligence claims and qualified immunity as to 42 U.S.C. § 1983 claims, the trial court erred in denying Haehnel's motion to dismiss plaintiffs' claims for punitive damages against her in her individual capacity. *See* N.C. Gen. Stat. § 1D-15(a) (2005) ("[p]unitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages"). Having held that Haehnel is immune, we need not address her other argument on appeal. Moreover, since Haehnel has not argued her remaining assignments of error, we deem them abandoned pursuant to N.C. R. App. P. 28(b)(6) (2005).

Reversed in part; dismissed in part.

Judges BRYANT and SMITH concur.