ALLISON QUETS, Plaintiff v. KEVIN NEEDHAM & DENISE NEEDHAM, Defendants

No. COA08-857

(Filed 21 July 2009)

**1. Collateral Estoppel and Res Judicata— revocation of consent to adoption—Florida action**

The trial court did not err by concluding that a surrogate mother's action to revoke her consent to adoption on the basis of fraud was barred by *res judicata* and by dismissing that action. Plaintiff based her claim on a Florida Open Adoption Agreement (OAA) that she thought was binding, but a subsequent Florida termination of parental rights order was a final judgment for *res judicata* purposes, the parties were the same in the North Carolina and Florida actions, and the substance of the North Carolina and Florida claims was the same. All three elements of *res judicata* were present.

**2. Adoption— Florida Open Adoption Agreement—specific enforcement action—best interest of children not considered—Agreement not enforceable**

The trial court properly dismissed a surrogate mother's claim to specifically enforce a Florida Open Adoption Agreement (OAA) where the subsequent adoption judgment referred to the OAA but contained no indication that the Florida court considered the children's best interest. The Florida court therefore did not intend that the OAA become an enforceable judgment subject to full faith and credit, and it remained a contract that was not enforceable in North Carolina because it was directly contrary to N.C.G.S. § 48-3-610.

**3. Adoption— surrogate mother—Open Adoption Agreement—not enforceable in North Carolina—no right to seek custody or visitation**

A Florida Open Adoption Agreement (OAA) was not enforceable in North Carolina and was not sufficient to restore a surrogate mother's right to seek custody or visitation with children after she consented to their adoption.

**4. Pleadings— Rule 11 sanctions—question of first impression**

The trial court erred by imposing Rule 11 sanctions where plaintiff's complaint raised a question of first impression, even though dismissal of the complaint was upheld.

Appeal by plaintiff from orders entered on or about 22 January 2008, 19 March 2008 and 21 April 2008 by Judge Anne Salisbury in Wake County District Court. Heard in the Court of Appeals 26 March 2009.

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for plaintiff-appellant.*

*Sandlin & Davidian, P.A., by Deborah Sandlin and Debra A. Griffiths, for defendant-appellees.*

STROUD, Judge.

Plaintiff appeals from the order dismissing her claims and the orders imposing sanctions pursuant to Rule 11 of the North Carolina Rules of Civil Procedure. Plaintiff presents four questions for this Court's consideration: (1) whether a failed challenge to a consent to adoption in another State based on fraud operates as *res judicata* to

bar a similar challenge in this State, (2) whether a private agreement for postadoption communication and visitation entered into in another State may be enforced in this State, (3) whether a birth parent who has consented to the adoption of her children has standing to sue for custody of or visitation with the subsequently adopted children, and (4) whether those three claims were so groundless in law and in fact that Rule 11 sanctions against plaintiff were appropriate. For the following reasons, we affirm as to all claims for relief in plaintiff's complaint, but reverse as to the Rule 11 sanctions.

## I. Background

In November 2004, plaintiff became pregnant with twins by means of *in vitro* fertilization using donor eggs and donor sperms. While still pregnant, plaintiff began to consider placing the twins for adoption. Plaintiff gave birth to twins Hannah and Tom[1] ("the children") in Orange County, Florida, on 6 July 2005.

On or about 18 July 2005, plaintiff began discussing adoption of the children with defendants, relatives of plaintiff's boyfriend. Plaintiff insisted that she continue to have contact with the children as a condition of giving them up for adoption. Around the end of July 2005, defendants hired Michael A. Shorstein, of Shorstein & Kelly, Attorneys at Law, P.A., to represent them in the adoption proceedings.

On 13 August 2005, plaintiff signed an Open Adoption Agreement ("the OAA"), which was signed by defendants on 16 August 2005. In the OAA, "[t]he parties agree[d] that the Birth Mother [should] have six visits per year with the Children" and agreed to various forms of communication and sharing of information regarding the children. The OAA also contained a provision that

the Birth Mother and the Adoptive Parents consent that this Agreement is binding upon them and will be referenced in the Final Judgment of Adoption and the parties will comply with the terms and conditions thereof.

(a) After the Final Judgment of Adoption is entered by the Court, the adoption cannot be set aside due to the failure of the Adoptive Parents, the Birth Mother or the Children to follow the terms of the agreement or a later change to this agreement.

(b) A disagreement between the parties or litigation brought to enforce or modify this agreement shall not affect the validity of

---

1. Pseudonyms are used to protect the identity of the minor children.

the adoption and shall not serve as a basis for orders affecting the custody of the Children.

Furthermore, "[t]he Parties agree[d] that all issues relating to this Agreement shall be within the exclusive and sole jurisdiction and venue of the Circuit Court, Fourth Judicial Circuit, In and For Duval County, Florida."

On 16 August 2006, plaintiff executed a Consent to Adoption before a notary public which stated, in pertinent part:

[1.] I, ALLISON QUETS, do hereby permanently relinquish, of my own free will all rights to and custody of the children to Michael A. Shorstein, Esquire, Shorstein & Kelly, Attorneys at Law, P.A., referred to sometimes hereafter as the "Adoption Entity[,]" for subsequent adoptive placement and do consent to the entry of a Court Order terminating my parental rights and finalizing the adoption. I believe it is in the best interest of the children to release them to the Adoption Entity for subsequent adoption. I understand that in signing this consent, I am permanently and forever giving up all of my parental rights to, and interest in, the children.

. . . .

[2.] I acknowledge my intent to place said children with the prospective adoptive parents immediately upon the execution of this document.

[3.] I hereby waive notice of any and all hearings and proceedings for this adoption and the Termination of my Parental Rights. . . .

[4.] . . . I have carefully reviewed this Consent and that [T]his Consent is executed freely and voluntarily, is not given under fraud or duress and is done so by the undersigned without requiring the complete identification of the adoptive parents.

. . . .

[5.] This consent is subject to the Open Adoption Agreement Between the Birth Mother, Allison Quets and Adoptive Parents, Kevin and Denise Needham, executed by the birth mother on August 13, 2005, and the adoptive parents on August 16, 2005.

(Internal brackets in original omitted.)

On 19 August 2005, three days after executing the Consent to Adoption, plaintiff filed a Motion for Revocation of Consent in the

Circuit Court, Fourth Judicial Circuit, In and For Duval County, Florida ("Duval County Family Court"). The motion requested that plaintiff be allowed to revoke her consent and have the minor children returned to her

> on the grounds that she has given written notice of the revocation within three (3) days of signing it; the Birth Mother was under extreme duress and mental anguish at the time and incapable of giving a knowing and voluntary consent; and the Birth Mother was given the impression from the conversations with persons involved herein, taken as a whole, that her rights under the open adoption agreement could *never* be modified or terminated.

(Emphasis in original).

Shorstein & Kelly filed a petition to terminate plaintiff's parental rights on 25 August 2005. On or about 9 September 2005, plaintiff filed Birthmother's [sic] Verified Motion to Set Aside Consent to Adoption ("the verified motion") in Duval County Family Court. The verified motion averred duress as grounds for setting aside the Consent to Adoption and included detailed factual allegations regarding plaintiff's fragile physical condition after the twins' birth and defendants' kinship to plaintiff's sixty-seven year-old boyfriend. On or about 16 February 2006, plaintiff filed Birth Mother's *Second Amended* Motion to Set Aside Consent to Adoption ("the amended motion"). In addition to duress, the amended motion averred that plaintiff's Consent to Adoption was void because of defendants' fraud in procuring the OAA.

The petition to terminate plaintiff's parental rights and plaintiff's motions to set aside consent were consolidated for trial in Duval County Family Court. On 29 June 2006, after a nine-day trial, the trial court entered a twenty-six page order ("the termination order"). The termination order made detailed findings of fact and concluded (1) "by clear and convincing evidence that Quets was not under any duress[,]" (2) "[a] complete lack of evidence exist[ed] that fraud occurred as it relate[d] to the validity of Quets's consent[,]" and (3) "[a]ll the elements [of the relevant Florida statutes for consent to adoption] ha[d] been met[.]" Accordingly, the trial court denied plaintiff's motion to withdraw her Consent to Adoption and granted the petition to terminate plaintiff's parental rights. The trial court "ordered and adjudged" that it "retain[ed] jurisdiction over the subject matter and over the minor children until a final judgment [was] entered on the adoption."

Plaintiff timely appealed the termination order to the Florida First District Court of Appeal. On 13 July 2006, plaintiff moved to suspend the termination of her parental rights and secure visitation rights during the pendency of the appeal. On 19 July 2006, the Duval County Family Court found that "[t]he parties have always intended for Quets to have some involvement in the children's lives as evidenced by the Open Adoption Agreement and to continue to do so will benefit the children . . . ." Accordingly, the trial court granted plaintiff visitation rights

> every third weekend . . . in the vicinity of the Needham's North Carolina home, from 6:00 p.m. on Friday until 6:00 p.m. Sunday evening; this visitation schedule shall remain in effect until the appeal process is complete or upon further order of this Court. Except as otherwise agreed to by the Needhams, the children shall not be removed from the general vicinity of the Needham's home.

On Friday, 22 December 2006, the children visited plaintiff as provided in the 19 July 2006 order. However, rather than return the children to defendants as scheduled on Sunday, 24 December 2006, plaintiff left the United States with the children.

On or about 27 December 2006, defendants filed a motion in Duval County Family Court requesting that (1) plaintiff's visitation rights to the children be terminated, (2) plaintiff be ordered to return the children immediately, (3) and plaintiff be adjudicated in contempt for violating the temporary visitation order of 19 July 2006. Defendants' motion was granted on 27 December 2006 and plaintiff was ordered to show cause why she should not be held in contempt.

Plaintiff and the children were located in Canada on 29 December 2006. Defendants flew to Canada and brought the children back to their home in North Carolina. Plaintiff was arrested and charged with kidnaping the children. Plaintiff subsequently pled guilty, was fined and placed on probation.

On or about 3 January 2007, defendants moved to dismiss plaintiff's appeal of the termination order on the grounds that a fugitive from justice is not entitled to seek relief from an appellate court. On 9 January 2007, plaintiff filed a brief with the Florida First District Court of Appeal in response to defendants' motion. In the brief plaintiff argued that her parental rights should not have been terminated because

her consent to adoption was not knowingly voluntarily, and unequivocally given. . . . [T]he Mother argues that her consent was void *ab initio* because her belief that the OAA was enforceable rendered her consent unknowing and involuntary. The OAA is not legally enforceable under either Florida law, where the adoption proceedings were to be held, or North Carolina law, where the Children would reside post-adoption. The Mother also argues that the consent was void because it was contingent upon the OAA and, therefore, not unequivocal. . . . Finally, the Mother argues that the Consent was procured by fraud because the Law Firm represented to her that the OAA is legally enforceable when it is not legally enforceable in either Florida or North Carolina.

On 6 June 2007, the termination order was affirmed *per curiam* by the Florida First District Court of Appeal. 961 So. 2d 935 (Fla. 1st Dist. Ct. App. 2007).

On 17 September 2007, the Duval County Family Court entered a Final Judgment of Adoption ("the adoption judgment") declaring the children to be "the legal children" of defendants. The adoption judgment also "ordered and adjudged" that "[t]he parties have entered into an Open Adoption Agreement that has previously been entered into evidence at the hearing terminating the birth mother's parental rights[,]" but did not expressly "incorporate" the OAA or make any findings as to whether postadoption contact with plaintiff would be in the best interest of the children. The adoption judgment was silent as to the retention of jurisdiction for the purpose of entering further orders related to custody and visitation, impliedly giving up jurisdiction per the termination order in which the Duval County Family Court expressly reserved jurisdiction only until entry of a final adoption judgment.

On 20 November 2007, plaintiff filed the complaint *sub judice* in Wake County District Court. The complaint asserted three alternative claims: (1) the children be returned to plaintiff on the grounds that plaintiff's consent to adoption was obtained by fraud, (2) specific performance of the OAA, or (3) visitation rights over and above those granted by the OAA on the grounds that plaintiff was "a qualified 'other person' under N.C.G.S. § 50-13.1" and that "the children's best interests [would be] met by having a continuing relationship with the Plaintiff."

While plaintiff's 20 November 2007 complaint was pending before Wake County District Court, defendants filed a motion on or about 2

January 2008 for declaratory judgment in Duval County Family Court. Defendant's motion requested that the OAA be permanently set aside. The record contains no trial court order disposing of the declaratory judgment motion.

On 22 January 2008, Wake County District Court Judge Anne Salisbury entered an order dismissing the complaint *sub judice*. The trial court order concluded, as a matter of law, that plaintiff lacked standing to bring an action for custody or visitation because a natural parent who consents to the adoption of her child forfeits standing to bring an action for custody or visitation in the future. The trial court also concluded that the existence of an OAA did not create a cause of action by itself and furthermore was not sufficient to trump the forfeiture of standing arising from the consent to adoption. Finally, the trial court ruled that plaintiff's claim to set aside the Consent to Adoption on the basis of fraud should be dismissed because of the *res judicata* effect of the termination order.

On or about 6 February 2008, defendants filed a motion for attorneys' fees in Wake County District Court. The trial court held a hearing on the motion 19 February 2008. The trial court concluded that plaintiff's "complaint was not well grounded in law or in fact and [did] not set forth a good faith basis for the extension, modification or reversal of existing law" at the time she filed it. Accordingly, the trial court sanctioned plaintiff pursuant to Rule 11 of the North Carolina Rules of Civil Procedure, ordering plaintiff to pay defendants' attorney fees in the amount of seven thousand four hundred eighty-two dollars and fifty cents ($7,482.50). Plaintiff appeals from the order dismissing her claims and from the order imposing Rule 11 sanctions.

II. Standard of Review for 12(b)(6) Dismissal

The standard of review for the dismissal of a complaint pursuant to Rule 12(b)(6) is well settled:

> In ruling upon a Rule 12(b)(6) motion, the trial court should liberally construe the complaint and should not dismiss the action unless it appears to a certainty that plaintiff is entitled to no relief under any statement of facts which could be proved in support of the claim.

*Arroyo v. Scottie's Professional Window Cleaning*, 120 N.C. App. 154, 158, 461 S.E.2d 13, 16 (1995), *disc. review improvidently allowed*, 343 N.C. 118, 468 S.E.2d 58 (1996). "On appeal from a motion

to dismiss under Rule 12(b)(6), this Court reviews *de novo* whether, as a matter of law, the allegations of the complaint are sufficient to state a claim upon which relief may be granted." *Farrell v. Transylvania Cty. Bd. of Educ.*, 175 N.C. App. 689, 695, 625 S.E.2d 128, 133 (2006) (citation, quotation marks and ellipses omitted). This includes not only dismissal based on the purported substantive claims raised in the complaint; "[r]es judicata is . . . a procedural question of law to be reviewed *de novo* pursuant to North Carolina law." *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 679, 657 S.E.2d 55, 62, *disc. review denied*, 362 N.C. 679, 669 S.E.2d 741 (2008).

### III. Revocation of Consent

**[1]** Plaintiff contends:

> [T]he trial court's conclusion that the Florida proceeding and order was *res judicata* as to Ms. Quets's . . . claim for relief [on the grounds of fraud] is erroneous, because the Florida trial court never litigated any issues concerning the OAA. This is substantiated not only by a review of the Florida trial court's own orders but also by the admissions made by [defendants] in subsequent pleadings filed in Florida where [defendants] themselves admitted that issues concerning the OAA had not been litigated.

> . . . .

> The trial court in Florida entered a twenty-six page order which does not contain any discussion as to the parties' respective rights and obligations under the OAA.

> . . . [Plaintiff's] counsel repeatedly asked [defendants'] counsel to point out where in the Florida trial court's order was there any holding that the OAA was not procured through fraud. [Defendants] to this day have yet to make such a showing.

> [Defendants] have been unable to make any showing as to the alleged *res judicata* [e]ffect of the Florida trial court order with respect to the OAA because [defendants] by their own subsequent pleadings filed in Florida admit that issues concerning the OAA **were not litigated in Florida**.

(Emphasis in original.) We disagree with plaintiff.

The doctrine of *res judicata* serves the

the dual purposes of protecting litigants from the burden of relitigating previously decided matters and promoting judicial econ-

omy by preventing needless litigation. . . . [W]here the second action between two parties is upon the same claim, the doctrine of *res judicata* allows the prior judgment to serve as a bar to the relitigation of all matters that were or should have been adjudicated in the prior action.

*City of Asheville v. State*, 192 N.C. App. 1, 17, 665 S.E.2d 103, 117 (2008) (citations, quotation marks and brackets in original omitted), *appeal dismissed and disc. review denied*, 363 N.C. 123, 672 S.E.2d 685 (2009).

"The essential elements of *res judicata* are: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in the prior suit and the present suit; and (3) an identity of parties or their privies in both suits." *Bryant v. Weyerhaeuser Co.*, 130 N.C. App. 135, 138, 502 S.E.2d 58, 61, *disc. rev. denied*, 349 N.C. 228, 515 S.E.2d 700 (1998). The pleadings are compared to determine if the causes of action in the two suits are in fact the same claim. *See Bockweg v. Anderson*, 333 N.C. 486, 492-93, 428 S.E.2d 157, 162 (1993) ("The only issue presented by the pleadings in the prior action was plaintiffs' claim based on defendants' negligent failure to provide . . . appropriate nutrition [leading to brain damage]. Therefore, the judgment in the prior action is not *res judicata* to the present action involving defendants' negligent diagnosis and treatment of the pelvic infection.").

In Florida, "an order of termination of parental rights permanently deprives the parents or legal guardian of any right to the child[;]" hence, it is a final judgment for purposes of *res judicata*. *Stefanos v. Rivera-Berrios*, 673 So. 2d 12, 13 (Fla. 1996) (citing § 39.469(2)(b), Fla. Stat. (1991), which was renumbered as § 39.811 and amended by 1998 Fla. Laws, c. 98-403, § 93, eff. Oct. 1, 1998); *accord* N.C. Gen. Stat. § 7B-1112 (2007) ("An order terminating the parental rights completely and permanently terminates all rights and obligations of the parent to the juvenile and of the juvenile to the parent arising from the parental relationship[.]").

There is no dispute that the parties were the same in the two actions. Turning to the factual allegations in the pleadings filed in the earlier action in Florida, the amended motion to set aside consent alleged:

23. The Birth Mother contends fraud was committed due to the alleged signing and notarization of the Open Adoption Agreement (which was contingent on the Consent[] for Adoption). The Open

Adoption Agreement was not fully executed by all parties despite the notary jurat declaring that it had been signed by all in her presence on the stated dates. In fact, the Birth Mother informed the adoptive parents and Shorstein and Kelly that she was not consenting to the adoption and notified them accordingly before the adoptive parents actually signed the Open Adoption Agreement.

24. The Birth Mother contends there was never a "meeting of the minds" for an Open Adoption Agreement to be entered into.

Similarly, the complaint *sub judice* pled "Plaintiff would not have consented to Defendants' adoption of the minor children but for the Defendants' consent to Plaintiff maintaining a continuing relationship with the minor children after adoption and incorporation of the Open Adoption Agreement into the terms of any final order of adoption." Additionally, the complaint *sub judice* alleged that "[t]he defendants took advantage of [the fact that they were cousins of plaintiff's boyfriend] in gaining the Plaintiff's consent to the adoption of the minor children."

Both claims, in North Carolina and Florida, sought to set aside the consent to adoption based on fraud in the procurement of the OAA. Furthermore, the allegations about defendants' kinship to plaintiff's boyfriend were pled in much greater detail in the verified motion filed in Duval County Family Court as the basis of a cause of action for duress. We conclude the substance of the two claims was the same, sufficient to satisfy the identity of the claims element of *res judicata*.

Because all three elements of *res judicata* are present *sub judice*, we conclude the trial court did not err in dismissing plaintiff's action to revoke her Consent to Adoption on the basis of fraud. Accordingly, this assignment of error is overruled.

IV. Specific Performance of the OAA

[2] The trial court concluded:

The Open Adoption Agreement was never incorporated into the final adoption decree, even though the trial judge was aware of its existence and references it in the decree but does not incorporate it. Therefore, it is not incorporated into a judgment, decree or other order providing for visitation of a child.

. . . .

[The] Open Adoption Agreement is a contract between the birth [mother] and the adoptive parents, not unlike a separation agreement between divorcing parents with provisions for custody and visitation. Like a separation agreement, the terms for custody and visitation are not enforceable by specific performance but, rather, by a Chapter 50 custody action of which, as previously noted, visitation is a component.

Plaintiff argues:

North Carolina law does not govern the parties' rights under the OAA—Florida law does. North Carolina is required under the full faith and credit provisions of the federal constitution to enforce the OAA consistent with the law under which the OAA was adopted. This is Florida law. Since Florida law *clearly*[2] permits parties to enter into enforceable OAAs, [plaintiff] pled valid claims for the enforcement of the OAA, and her complaint should not have been dismissed.

(Emphasis and footnote added.) It appears that plaintiff has confused the legal status of private contracts with that of public judicial proceedings.

The Full Faith and Credit provision of the United States Constitution by its terms applies to "public Acts, Records, and judicial Proceedings" of other States, not to private contracts. U.S. Const. art. IV, § 1. More specifically, pursuant to the authority granted by the Full Faith and Credit Clause, Congress enacted the Parental Kidnaping Prevention Act ("PKPA") to prescribe the effect of child custody and visitation orders entered into in other States. U.S. Const. art. IV, § 1; 28 U.S.C. § 1738A (2006). The PKPA states, "[t]he appropriate authorities of every State shall enforce according to its terms, . . . any custody determination or visitation determination made" by a State with proper jurisdiction. 28 U.S.C. § 1738A(a) (2006). A " 'visitation determination' means a *judgment, decree, or other order of a court* providing for the visitation of a child and includes permanent and temporary orders and initial orders and modifications." 28 U.S.C. § 1738A(b)(9) (emphasis added).

---

2. It is far from clear that OAAs are enforceable in Florida. Plaintiff cited no cases so holding and we found none either for or against. Indeed, defendants' adoption attorney believed that OAAs were enforceable, but plaintiff's appellate brief in the termination action asserted that they were not. We assume for our purposes that an OAA is enforceable in Florida.

QUETS v. NEEDHAM

[198 N.C. App. 241 (2009)]

In contrast, enforcement of private contracts entered into in other States is a matter of comity. *Davis v. Davis*, 269 N.C. 120, 125, 152 S.E.2d 306, 310 (1967) ("The extent to which the law of one [S]tate will be recognized and enforced in another depends upon the rule of comity. . . . It is thoroughly established as a broad general rule that foreign law or rights based thereon will not be given effect or enforced if opposed to the settled public policy of the forum." (Citations and quotation marks omitted.)). Comity, unlike full faith and credit, is voluntary and subject to four broad exceptions[3] in North Carolina. *Bundy v. Commercial Credit Co.*, 200 N.C. 511, 517, 157 S.E. 860, 863 (1931) (outlining exceptions because "the rule of comity is not a right of any State or country, but is permitted and accepted by all civilized communities"); *Gooch v. Faucett*, 122 N.C. 270, 272-73, 29 S.E. 362, 363 (1898) (explaining that comity is a "voluntary act" whereby North Carolina courts "have always expounded and executed [contracts] according to the laws of the place in which they were made, provided that law was not repugnant to the laws or policy of" North Carolina) (quoting *Bank [of Augusta] v. Earle*, [38 U.S.] 13 Pet. 519, 589 (1839)).

Plaintiff's confusion is understandable. In Florida, as in North Carolina, private contracts between parties in domestic matters such as property settlement and child support are sometimes incorporated into a judgment or order of the court. *See, e.g, Eaton v. Eaton*, 238 So. 2d 166, 168 (Fla. 4th Dist. Ct. App. 1970) ("[O]nce such an agreement is approved by the court and by reference expressly made a part of the final decree of divorce, the provisions relating to custody and support of the minor child or children are no longer merely in the status of an agreement of the parties, but become elevated to the dignity and effect of a court decree."); *Smart v. State*, 198 N.C. App. ——, ——, —— S.E.2d ——, —— (2009). Upon incorporation the contract loses its status as a contract and becomes an

---

3. *Bundy v. Commercial Credit Co.* outlined the exceptions to the rule of comity as follows:

> The general doctrine that a contract, valid where it is made, is valid also in the courts of any other country or State, where it is sought to be enforced, even though had it been in the latter country or State it would be illegal and hence unenforceable, is subject to several exceptions: (1) When the contract in question is contrary to good morals; (2) when the State of the forum, or its citizens, would be injured by the enforcement by its courts of contracts of the kind in question; (3) when the contract violates the positive legislation of the State of the forum, that is, contrary to its Constitution or statutes[;] and (4) when the contract violates the public policy of the State of the forum.

200 N.C. 511, ——, 157 S.E. 860, 863 (citation and quotation marks omitted).

enforceable order of the court. *Walsh v. Walsh*, 388 So. 2d 240, 242 (Fla. 2d Dist. Ct. App. 1980) ("On incorporating the agreement the court elevated it to the dignity and effect of a court decree, which it then had continuing jurisdiction to enforce."); *accord Cavenaugh v. Cavenaugh*, 317 N.C. 652, 659, 347 S.E.2d 19, 24 (1986) ("A court approved separation agreement is enforceable by the contempt power of the court and may be modified like other judgments in domestic relations cases. . . . By incorporating the separation agreement of the parties into the judgment of divorce the trial judge made that agreement an order of the court . . . .").

Because the adoption judgment makes reference to the OAA, but does not use any specific language expressly "incorporating" the OAA into the adoption judgment or ordering the parties to comply with it, we find it necessary to determine whether the OAA is a judgment, subject to full faith and credit, or merely a contract, subject to the rule of comity and the four broad exceptions set forth in *Bundy*, 200 N.C. at 517, 157 S.E. at 863. This appears to be a case of first impression because we have been unable to find a case in Florida or North Carolina, considering what, if any, particular language must be used in a trial court order for an underlying domestic contract to be given the force of a judgment of a court.

Generally, a domestic contract is incorporated into a judgment of the court if (1) the parties express the intent to incorporate within the four corners of the contract, *Cavenaugh*, 317 N.C. at 660, 347 S.E.2d at 24, and (2) the contract is approved by the court, *Walters v. Walters*, 307 N.C. 381, 386, 298 S.E.2d 338, 342 (1983). However, contracts or agreements affecting custody or visitation of minor children are always subject to the additional proviso that the trial court consider the best interest of the children before entering an order. *Morrow v. Morrow*, 103 N.C. App. 787, 789, 407 S.E.2d 286, 287 (1991) (" '[P]arents cannot in a separation agreement, or any other contract, enter into an agreement dealing with the custody and support of their children which will deprive the court of its inherent as well as statutory authority to protect the interests and provide for the welfare of minors.' " (Quoting 2 R. Lee, *N.C. Family Law* § 189 (1980).)). Florida adoption law is consistent with these general principles. "If the court determines that the *child's best interests will be served by post-adoption communication* or contact, the court shall so order, stating the nature and frequency for the communication or contact. This order shall be made a part of the final adoption order[.]" Fla. Stat. § 63.0427(1)(d) (2005).

Although the OAA stated that "the Birth Mother and the Adoptive Parents consent that this Agreement . . . will be referenced in the Final Judgment of Adoption" and the adoption judgment does refer to the OAA, the adoption judgment contains no indication that the trial court considered whether postadoption contact with plaintiff would be in the children's best interest. Accordingly, we conclude that the trial court did not intend for the OAA to become an enforceable order of the court subject to full faith and credit. The OAA remains a mere contract.

In order to decide if the OAA is enforceable in North Carolina as a contract, we must consider if it is subject to one of the four exceptions of the rule of comity. *Bundy*, 200 N.C. at 517, 157 S.E. at 863. The third exception to the rule of comity is "when the contract violates the positive legislation of the State of the forum, that is, contrary to its Constitution or statutes[.]" *Id.*

The OAA *sub judice* is contrary to N.C. Gen. Stat. § 48-3-610, which states:

> If a person executing a consent and the prospective adoptive parent or parents enter into an agreement regarding visitation, communication, support, and any other rights and duties with respect to the minor, this agreement shall not be a condition precedent to the consent itself, failure to perform shall not invalidate a consent already given, and *the agreement itself shall not be enforceable.*

N.C. Gen. Stat. § 48-3-610 (2007) (emphasis added). Because the OAA is a contract directly contrary to a North Carolina statute, it may not be enforced in this State.[4] *Bundy*, 200 N.C. at 517, 157 S.E. at 863. Accordingly, we conclude the trial court properly dismissed plaintiff's claim to specifically enforce the OAA.

---

4. We are *not* holding that a *court order* for postadoption visitation by a birth parent, entered in one of the growing number of states which allow postadoption contact in adoption judgments and orders, would be unenforceable in North Carolina. *See, e.g.,* Minn. Stat. § 259.58 (2007) (allowing a trial court to include an agreement for postadoption visitation in an adoption order upon a finding that such visitation is in the child's best interests); Rev. Code Wash. § 26.33.295(2) (2005) (same); *In re Guardianship of K.H.O.,* 736 A.2d 1246, 1259 (N.J. 1999) (listing states which recognize postadoptive communication agreements and discussing reasons for and against recognizing such agreements). Failure to enforce a *court order* for postadoption visitation by a birth parent would be contrary to the PKPA, which states, "[t]he appropriate authorities of every State shall enforce according to its terms" any "judgment, decree, or other order of a court providing for the visitation of a child[.]" 28 U.S.C. § 1738A.

## V. Standing to Seek Modification

**[3]** The trial court concluded that "once plaintiff's parental rights were terminated, she no longer has standing to bring an action for custody, of which visitation is a component, even as a third party." Plaintiff argues that the OAA gives her standing. We disagree with plaintiff.

"A person seeking custody under N.C. Gen. Stat. § 50-13.1 must be able to claim a right to such custody. . . . [A natural parent] los[es] that right when he consent[s] to the adoption of [his] children." *Kelly v. Blackwell*, 121 N.C. App. 621, 622, 468 S.E.2d 400, 401, *disc. review denied*, 343 N.C. 123, 468 S.E.2d 782 (1996). In other words, "the right of [a child's] natural mother [to seek custody] after she has permitted the child's adoption by others, is no greater than that of a stranger to the child." *Rhodes v. Henderson*, 14 N.C. App. 404, 407-08, 188 S.E.2d 565, 567 (1972) (internal parentheses omitted).

Plaintiff lost her right to seek custody of or visitation with the children when she consented to their adoption. The OAA, being unenforceable in this State, was not sufficient to restore that right. Accordingly, this argument is without merit.

## VI. Rule 11 Sanctions

**[4]** Plaintiff contends the trial court erred when it imposed sanctions against her pursuant to Rule 11 of the North Carolina Rules of Civil Procedure. We agree.

> The trial court's decision to impose or not to impose mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a) is reviewable *de novo* as a legal issue. In the *de novo* review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a).

*Turner v. Duke University*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989).

"Rule 11 sanctions are inappropriate where the issue raised by a plaintiff's complaint is one of first impression." *Herring v. Winston-Salem/Forsyth Cty. Bd. of Educ.*, 188 N.C. App. 441, 453, 656 S.E.2d 307, 315 (2008). *Herring* reversed a trial court order imposing Rule 11 sanctions on the grounds that sanctions were

unsupported because at the time Plaintiff filed the complaint, no case had specifically held that [plaintiff's legal position was incorrect]. Although we reach that conclusion in the present case, it is not appropriate to sanction Plaintiff's attorneys for filing the complaint in the present case when no case had specifically held so at that time. Accordingly, we hold that the trial court's conclusion of law [imposing Rule 11 sanctions] was unsupported.

*Id.*

Plaintiff's complaint, as we noted *supra* Part IV, raised a question of first impression. Even though we have upheld dismissal of plaintiff's complaint on all the substantive issues raised therein, the trial court's imposition of Rule 11 sanctions against plaintiff was error. Accordingly, the trial court order imposing sanctions is reversed.

## VII. Conclusion

*Res judicata* bars plaintiff's claim to set aside her consent to adoption based on fraud. The OAA is a contract and not an enforceable order of the Florida court. Plaintiff has no standing to file an action for custody of the children. Accordingly, we affirm the order of the trial court dismissing plaintiff's complaint. However, Rule 11 sanctions were not appropriate in this case, and the order imposing Rule 11 sanctions is reversed.

Affirmed in part; reversed in part.

Judges JACKSON and STEPHENS concur.