JAMES E. PRICE, PLAINTIFF-APPELLEE v. LARRY DAVIS AND B. DEWITT CREECY, DEFENDANT-APPELLANTS

No. COA98-591

(Filed 16 March 1999)

### 1. Appeal and Error— appealability—interlocutory order— sovereign immunity

An interlocutory order denying defendant's motion for summary judgment was immediately appealable to the extent the appeal is based on the affirmative defense of governmental or sovereign immunity.

### 2. Governmental Immunity; Prisons and Prisoners— inmate— damages claim—prison officials—sovereign immunity

Sovereign immunity barred an inmate's claim for damages against defendant prison officials in their official capacities based upon their confiscation of alleged contraband items from the inmate upon his arrival at the prison and their refusal to permit the inmate to receive legal texts from an outside visitor since defendants were performing governmental functions for sovereign immunity purposes, and the record does not indicate that immunity has been waived through consent or the purchase of liability insurance. Furthermore, the prison officials were immune from a suit in their official capacities for damages under 42 U.S.C. § 1983.

PRICE v. DAVIS

[132 N.C. App. 556 (1999)]

**3. Public Officers and Employees— prison officials—inmate's claim—qualified immunity**

The doctrine of qualified immunity shielded prison officials from an inmate's claim for damages against them in their individual capacities based upon their allegedly unconstitutional confiscation of contraband (solid-barrel ball point pens, highlighters, and a padlock) when the inmate arrived at the prison and their refusal to permit the inmate to receive legal texts from an outside visitor where the officials acted in accordance with the Division of Prisons Policy Manual and the prison's operating procedures manual.

**4. Public Officers and Employees— prison officials—individual liability—public official immunity**

Defendant prison officials are protected by public official immunity from individual liability on plaintiff inmate's claim for alleged violations of state statutes and prison regulations arising from the confiscation of contraband when he arrived at the prison and refusal to permit him to receive legal texts from an outside visitor where plaintiff failed to show that the defendants' conduct was malicious, corrupt, or outside the scope of their official authority.

Appeal by defendants from order entered 6 March 1998 by Judge Cy A. Grant, Sr., in Northampton County Superior Court. Heard in the Court of Appeals 11 January 1998.

*James E. Price, pro se, for plaintiff-appellee.*

*Attorney General Michael F. Easley, by Assistant Attorney General William McBlief, for defendant-appellants.*

MARTIN, Judge.

Plaintiff, an inmate confined in the custody of the North Carolina Department of Correction, filed this action on 12 May 1995 seeking compensatory and punitive damages for alleged deprivations of his statutory and constitutional rights. In his complaint, plaintiff alleged that on 23 March 1995, he was transferred from Harnett Correctional Center to Odom Correctional Center. Upon his arrival at Odom, plaintiff alleged that defendant Creecy, a correctional sergeant, confiscated twenty-six solid-barrel ball point pens, nine highlighters, and a padlock from plaintiff, in violation of G.S. § 148-11, prison policy, and

plaintiff's due process rights. Plaintiff also alleged that on 8 April 1995, defendant Davis, the assistant superintendent at Odom, refused to permit plaintiff to receive various legal texts which had been brought to him by a visitor, in violation of G.S. § 148-11, prison policy, and plaintiff's constitutional right to meaningful access to the courts.

Defendants filed an answer, admitting the confiscation of contraband materials from plaintiff, denying the other material allegations of the complaint, and asserting affirmative defenses, including sovereign and governmental immunity, and qualified immunity. Defendants thereafter moved for summary judgment. The motion was supported by affidavits of defendants Davis and Creecy, in which they averred the contraband items were confiscated from plaintiff according to written Odom Standard Operating Procedures and that replacement "see-through" pens were offered to plaintiff but refused by him. They also averred that plaintiff's personal lock was considered a security risk and a replacement combination lock was issued to him. The confiscated materials were secured in the Odom mailroom and, according to defendant Davis, were forwarded to the Columbus Correctional Center upon plaintiff's subsequent transfer to that facility. In addition, defendant Davis asserted that Division of Prisons ("DOP") Policy and Odom Standard Operating Procedures permit medium security inmates such as plaintiff to receive publications only directly from the publisher. Copies of the applicable DOP Policy Manual and Odom Standard Operating Procedures, as well as correspondence directed to plaintiff and various other documents, were attached to the affidavits. Plaintiff asserted the confiscated items were permitted according to the terms of an "Inmate Booklet", dated April 1997, issued by the Department of Correction.

On 6 March 1998, the trial court entered an order in which it determined that a genuine issue of material fact existed as to "whether a prisoner may rely upon the Department of Correction 'Inmate Booklet' " and that defendants were not entitled to summary judgment. Defendants appeal from the denial of their motion for summary judgment.

I.

[1] The order denying defendants' motion for summary judgment is interlocutory; while, as a general rule, such orders are not immediately appealable, this Court has repeatedly held that appeals raising issues of governmental or sovereign immunity affect a substantial

right sufficient to warrant immediate appellate review. *See, e.g.,* *Dewort v. Polk County,* 129 N.C. App. 789, 501 S.E.2d 379 (1998), *Hedrick v. Rains,* 121 N.C. App. 466, 466 S.E.2d 281, *affirmed,* 344 N.C. 729, 477 S.E.2d 171 (1996). "We allow interlocutory appeals in these situations because 'the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action.'" *Epps v. Duke University, Inc.,* 122 N.C. App. 198, 201, 468 S.E.2d 846, 849, *disc. review denied,* 344 N.C. 436, 476 S.E.2d 115 (1996) (citing *Herndon v. Barrett,* 101 N.C. App. 636, 639, 400 S.E.2d 767, 769 (1991)). Therefore, to the extent defendants' appeal is based on an affirmative defense of immunity, this appeal is properly before us.

## II.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1997). The movant bears the burden of establishing that no genuine issue of material fact exists, and can meet the burden by either "1) Proving that an essential element of the opposing party's claim is nonexistent; or 2) Showing through discovery that the opposing party cannot produce evidence sufficient to support an essential element of his claim nor sufficient to surmount an affirmative defense to his claim." *Messick v. Catawba County,* 110 N.C. App. 707, 712, 431 S.E.2d 489, 492-93, *disc. review denied,* 334 N.C. 621, 435 S.E.2d 336 (1993).

## III.

[2] We first address plaintiff's claims for damages, made against defendants in their official capacities, alleging defendants' actions violated the provisions of North Carolina statutes and prison regulations. As a general rule, governmental, or sovereign immunity, "shields municipalities and the officers or employees thereof sued in their official capacities from suits based on torts committed while performing a governmental function." *Kephart v. Pendergraph,* 131 N.C. App. 559, 507 S.E.2d 915, 918 (1998). Provided that the State has not consented to suit or has waived its immunity through the purchase of liability insurance, "the immunity provided by the doctrine is absolute and unqualified." *Messick,* at 714, 431 S.E.2d at 494. Moreover, "[t]he provision of police services, and the erection and operation of prisons and jails, have previously been determined to

constitute governmental functions." *Kephart, supra* (citations omitted) (holding actions of county officials in maintaining confinement facilities constitute governmental functions for purposes of applying sovereign immunity); *see also, Harwood v. Johnson*, 326 N.C. 231, 388 S.E.2d 439, *reh'g denied*, 326 N.C. 488, 392 S.E.2d 90 (1990).

In confiscating alleged contraband items from plaintiff upon his arrival at Odom, and in preventing his receipt of publications from an outside visitor, defendants were acting in their official State capacities; such actions were, therefore, governmental functions for purposes of sovereign immunity. Plaintiff has not alleged, nor does the record indicate, that immunity has been waived through consent or the purchase of liability insurance. *See Messick* at 714, 431 S.E.2d at 494 (holding summary judgment for defendants proper on basis of sovereign immunity where defendants were engaged in governmental functions and where record did not indicate State waiver or purchase of liability insurance). Thus, sovereign immunity bars plaintiff's claims for damages made against defendants in their official capacities.

In addition, we hold defendants to be immune from suit in their official capacities for any alleged violations of the United States Constitution under color of state law. 42 U.S.C. § 1983 authorizes such a civil action for deprivation of constitutional rights, and provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.A. § 1983 (Cum. Supp. 1998). However, our Supreme Court has held that the text of § 1983 permits actions against "persons," but that "neither a State nor its officials acting in their official capacity" are "persons" under § 1983 when monetary damages are sought. *See Corum v. University of North Carolina*, 330 N.C. 761, 771, 413 S.E.2d 276, 282-83, *reh'g denied*, 331 N.C. 558, 418 S.E.2d 664, *cert. denied*, 506 U.S. 985, 121 L.Ed.2d 431 (1992). In *Corum*, the Court held that the plaintiff, who was seeking damages against state employees in

their official capacities, was barred from maintaining the suit; we likewise hold defendants are immune from suit in their official capacities. *See Stroud v. Harrison,* 131 N.C. App. 480, 508 S.E.2d 527 (1998).

IV.

**[3]** We next consider plaintiff's claims asserted against defendants in their individual capacities. Defendants argue the doctrine of qualified immunity shields them from plaintiff's claims. We agree. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Roberts v. Swain,* 126 N.C. App. 712, 718, 487 S.E.2d 760, 765, *disc. review denied,* 347 N.C. 270, 493 S.E.2d 746 (1997) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 73 L.Ed.2d 396, 410 (1982)). Moreover, "[r]esolution of whether a government official is insulated from personal liability by qualified immunity 'turns on the "objective legal reasonableness" of the [official's] action . . . assessed in light of the legal rules that were "clearly established" at the time it was taken.'" *Id.* (citations omitted).

We hold that defendants' actions were objectively reasonable in light of the clearly established legal rules in effect at the time of the alleged violations of plaintiff's rights, and that defendants are therefore entitled to qualified immunity. Plaintiff asserts that defendants unconstitutionally deprived him of his pens, highlighters, padlock, and legal texts. However, defendants acted in accord with the discretion afforded them by provisions contained in the DOP Policy Manual, as well as the Odom Standard Operating Procedure Manual. Section .0501 of the DOP manual provides that when an inmate arrives at a prison facility the general rule is that the inmate may retain certain personal belongings, but further provides:

the Division of Prisons assumes no responsibility for replacing any items if they are damaged, destroyed or lost. The amount of authorized items may be limited where necessary to provide for proper accountability, contraband control, storage space, sanitary conditions and resident morale.

DOP Policy 2F.0501.

Moreover, pursuant to Odom Standard Operating Procedures, inmates are not permitted to retain any type of solid-barrel writing

instrument, including the type of pens and highlighters which plaintiff sought to retain upon his arrival at Odom, and such items may be classified as contraband for which confiscation by prison officials is clearly authorized. *See also* N.C. Gen. Stat. § 148-18.1 (1997) ("Any item of personal property which a prisoner in any correctional facility is prohibited from possessing by State law or which is not authorized by rules adopted by the Secretary of Correction shall . . . be confiscated . . ."). The evidentiary materials of record also reflect that it is Odom policy to allow inmates to receive legal texts directly from publishers only, that plaintiff was offered replacement writing utensils, and that the confiscated materials were placed in a mailroom and subsequently forwarded to the facility to which plaintiff was transferred. Defendants acted within clearly established legal rules in confiscating and withholding certain materials from plaintiff, and plaintiff has failed to meet his burden of showing that defendants did not act within clearly established law, or that their conduct otherwise violated plaintiff's rights. *See Hawkins v. State*, 117 N.C. App. 615, 453 S.E.2d 233, *review dismissed as improvidently granted*, 342 N.C. 188, 463 S.E.2d 79 (1995) (plaintiff bears the burden of establishing a violation of a clearly established right under doctrine of qualified immunity).

**[4]** Moreover, defendants are protected by public official immunity from individual liability for alleged violations of State statutes and prison regulations. The essence of the doctrine of public official immunity is that public officials engaged in the performance of their governmental duties involving the exercise of judgment and discretion, and acting within the scope of their authority, may not be held liable for such actions, in the absence of malice or corruption. *Barnett v. Karpinos*, 119 N.C. App. 719, 729, 460 S.E.2d 208, 213, *disc. review denied*, 342 N.C. 190, 463 S.E.2d 232 (1995) (quoting *Smith v. State*, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976)). "As long as the official lawfully exercises his judgment or discretion, stays within the scope of his official authority, and does not act with malice or corruption, he is protected from liability." *Id.*

Here, plaintiff has failed to allege or show that defendants acted maliciously or outside the scope of their authority. *See Epps* at 205, 468 S.E.2d at 851-52 (to maintain individual capacity suit plaintiff must make initial *prima facie* showing that defendants' conduct is malicious, corrupt, or outside scope of official authority). Thus, plaintiff is unable to show an essential element of his claim and summary judgment should have been granted.

**RIDENHOUR v. IBM CORP.**

[132 N.C. App. 563 (1999)]

In light of defendants' immunity from suit, any issue of fact which may exist in this case concerning plaintiff's reliance upon the Department of Correction "Inmate Booklet" is not material. The order denying defendants' motion for summary judgment is reversed and this case is remanded to the Superior Court of Northampton County for entry of summary judgment in favor of defendants.

Reversed and remanded.

Chief Judge EAGLES and Judge McGEE concur.