SEAN FARRELL, MINOR BY AND THROUGH HIS PARENTS AND LEGAL GUARDIANS, WILLIAM FARRELL AND SUZANNE FARRELL; WILLIAM FARRELL, INDIVIDUALLY; AND SUZANNE FARRELL, INDIVIDUALLY, PLAINTIFFS v. TRANSYLVANIA COUNTY BOARD OF EDUCATION; TERRY HOLLIDAY, FORMER SUPERINTENDENT OF TRANSYLVANIA COUNTY SCHOOLS IN HIS OFFICIAL CAPACITY; PATRICIA MORGAN, FORMER PRINCIPAL OF BREVARD ELEMENTARY SCHOOL, IN HER OFFICIAL CAPACITY; RON KIVINIEMI, FORMER ASSISTANT PRINCIPAL OF BREVARD ELEMENTARY SCHOOL AND PRINCIPAL OF PISGAH FOREST ELEMENTARY SCHOOL IN HIS OFFICIAL CAPACITY; KATHY HAEHNEL, DIRECTOR OF FEDERAL PROGRAMS AT TRANSYLVANIA COUNTY SCHOOLS IN HER INDIVIDUAL AND OFFICIAL CAPACITIES; DONNA GARVIN, FORMER SPECIAL EDUCATION TEACHER AT BREVARD ELEMENTARY SCHOOL IN HER INDIVIDUAL AND OFFICIAL CAPACITIES; AND JANE WOHLERS, FORMER TEACHER'S AIDE AT BREVARD ELEMENTARY SCHOOL IN HER INDIVIDUAL AND OFFICIAL CAPACITIES, DEFENDANTS

No. COA08-310-2

(Filed 18 August 2009)

**1. Appeal and Error— appealability—interlocutory order— substantial right—public official immunity**

Public official immunity affects a substantial right and is immediately appealable.

**2. Immunity; Tort Claims Act— teacher—public official immunity—abuse of severely disabled child**

A *de novo* review revealed the trial court did not err by denying defendant teacher's motion for summary judgment with respect to the State tort claims arising from the alleged abuse of a severely disabled child even though defendant contends she is entitled to public official immunity.

**3. Immunity; Tort Claims Act— § 1983—teacher—qualified immunity—abuse of severely disabled child**

A *de novo* review revealed the trial court did not err by denying defendant teacher's motion for summary judgment with respect to the federal claims including a section 1983 claim for

supervisory liability arising from the alleged abuse of a severely disabled child even though defendant contends she is entitled to qualified immunity to shield her from suit.

Appeal by Defendant Donna Garvin from an order entered 30 October 2007 by Judge Mark E. Powell in Transylvania County Superior Court. Heard in the Court of Appeals 10 September 2008. Opinion filed 2 December 2008. Petition for rehearing granted 30 January 2009, reconsidering whether federal qualified immunity applies, with the filing of additional briefs and without oral argument. The following opinion supersedes and replaces the opinion filed 3 December 2008.

*The Law Office of Stacey B. Bawtinhimer by Stacey B. Bawtinhimer, and The Foster Law Firm by Jeffery B. Foster, for plaintiffs-appellees.*

*Roberts & Stevens, P.A. by Christopher Z. Campbell and Chad R. Donnahoo, for Donna Garvin, defendant-appellant.*

JACKSON, Judge.

Donna Garvin ("defendant") appeals the trial court's denial of her motion for summary judgment in an action brought against her and other defendants by William and Suzanne Farrell ("plaintiffs") related to the physical and emotional abuse of their son, Sean Farrell ("Sean") in defendant's special needs classroom. For the reasons stated below, we affirm.

This case previously has been appealed to this Court. In our 7 February 2006 opinion, we dismissed as interlocutory defendant's appeal of the denial of her motion to dismiss. *See Farrell v. Transylvania Cty. Bd. of Educ.*, 175 N.C. App. 689, 690, 625 S.E.2d 128, 130 (2006) (*Farrell I*).

During the 2001 school year, Sean was a student with severe disabilities in defendant's self-contained, special needs classroom. Sean became the victim of physical and emotional abuse at the hands of one of defendant's teacher's aides, Jane Wohlers ("Wohlers"). According to the complaint, Wohlers (1) force fed Sean on a regular basis, at times to the point of choking; (2) yelled at him and used abusive language; (3) violently jerked back his head and pulled his hair while washing his face; and (4) used a stuffed animal she knew that Sean was terrified of to intimidate him to stay on his mat for naptime.

**FARRELL v. TRANSYLVANIA CNTY. BD. OF EDUC.**

[199 N.C. App. 173 (2009)]

Defendant received other complaints about Wohlers' abusive behavior towards the students in her classroom. One aide witnessed Wohlers (1) yell at the children; (2) pinch them behind their ears and squeeze them under the arms causing bruises; (3) stuff food into students' mouths, hold their heads in a headlock and continue to stuff food into students' mouths until they gagged during which time one student projectile vomited; (4) verbally intimidate the children by yelling at them until they broke down crying; (5) hold their foreheads roughly and yank their heads back in order to wash their faces in the bathroom; and (6) make inappropriate sexual and lewd comments in front of the children. Another aide reported that Wohlers stated, "I can say whatever I want because these kids can't talk so they can't tell their parents" and that she could "do whatever she wanted to one of the black children in the room because his bruises wouldn't show."

As a result of the alleged abuse, Sean stopped eating. His condition became so severe that he was admitted to Mission Hospital from 16 January through 24 January 2002 for intravenous therapy and a thorough medical work-up to find a cause for his severe anxiety associated with food. The tests indicated that there was no physical reason for Sean's failure to eat and drink. The attending pediatric physician and residents from Mission Hospital, including the gastrointestinal doctor and occupational therapists all agreed that his eating problems were consistent with severe anxiety and depression due to suspected child abuse in the classroom. Ultimately, a feeding tube was inserted for a period of approximately six months.

Plaintiffs brought suit against defendant, Wohlers, several school administrators, and the county school board. The instant appeal involves only defendant Donna Garvin, the classroom teacher.

Among other claims, plaintiffs sued defendant in her individual capacity for negligent infliction of emotional distress on Sean and themselves pursuant to the State Tort Claims Act, and for federal civil rights violations pursuant to section 1983 of Title 42 of the United States Code.

On 8 March 2007, defendant filed a joint motion for summary judgment with other of the defendants seeking, *inter alia*, to have the court dismiss the claims against her in her individual capacity. Defendant alleged she was entitled to public official immunity on the State claims and qualified immunity on the federal claim. By order filed 30 October 2007, defendant's motion was denied as "issues of material fact remain[ed]" as to the claims against her in her individ-

ual capacity, although it was granted with respect to the section 1983 claims against all defendants in their official capacities.

[1] The order in this case did not dispose of the entire case; therefore, it is interlocutory. *See Johnson v. Lucas*, 168 N.C. App. 515, 518, 608 S.E.2d 336, 338, *aff'd*, 360 N.C. 53, 619 S.E.2d 502 (2005) (per curiam) (order granting partial summary judgment is interlocutory). However, an interlocutory order may be appealed immediately if it affects a substantial right of the parties. N.C. Gen. Stat. § 1-277 (2007). This Court has held that claims of immunity affect a substantial right entitled to immediate appeal. *See e.g.*, *Summey v. Barker*, 142 N.C. App. 688, 689, 544 S.E.2d 262, 264 (2001) (citations omitted) (holding public official immunity affects a substantial right and is immediately appealable).

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). The moving party bears the burden of showing that no triable issue of fact exists. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). One means of doing so is to show that the non-moving party cannot surmount an affirmative defense which would bar the claim. *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citations omitted).

A trial court's rulings on summary judgment motions are reviewed by this Court *de novo*. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citing *Builders Mut. Ins. Co. v. North Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006)). In deciding a motion for summary judgment, a trial court must consider the evidence in the light most favorable to the non-moving party. *See Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). If there is any evidence of a genuine issue of material fact, a motion for summary judgment should be denied. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 471, 597 S.E.2d 674, 694 (2004).

[2] We first discuss defendant's second argument, in which she contends that the trial court erred in denying her summary judgment with respect to the State tort claims against her. She argues she is entitled to public official immunity to shield her from suit. We disagree.

"It is settled law in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of

judgment and discretion, may not be held personally liable for mere negligence in respect thereto." *Smith v. Hefner*, 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952) (citations omitted). "Our courts have recognized several basic distinctions between a public official and a public employee, including: (1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties." *Isenhour v. Hutto*, 350 N.C. 601, 610, 517 S.E.2d 121, 127 (1999) (citations omitted).

Defendant contends that a teacher's position is created by statute, satisfying the first prong of the public official test. She cites North Carolina General Statutes, sections 115C-307 and 115C-325 for support. However, section 115C-307 does not create the position of teacher; it defines the duties of teachers, student teachers, substitute teachers, and teacher assistants. In contrast, as this Court explained in *Farrell I*, section 115C-287.1(a)(3) creates the position of "school administrator" which includes principals, assistant principals, supervisors, and directors. *See Farrell I*, 175 N.C. App. at 696, 625 S.E.2d at 133-34 (holding that Haehnel, as the director of federal programs for the county school system, was a public official who qualifies for public official immunity as a "school administrator" pursuant to section 115C-287.1(a)(3)). Further, subsection 115C-325(a) merely sets forth the definitions used in section 115C-325 which governs the "system of employment for public school teachers." Subsection (a)(6) defines a "teacher" as used in that section, as opposed to a "career employee," "case manager," or "school administrator;" it does not create the position of public school teacher.

In *Mullis v. Sechrest*, 126 N.C. App. 91, 484 S.E.2d 423 (1997), *rev'd on other grounds*, 347 N.C. 548, 495 S.E.2d 721 (1998), this Court declined to grant a teacher public official status, stating that he was not entitled to public official immunity "because his duties at the time the alleged negligence occurred are not considered in the eyes of the law to involve the exercise of the sovereign power; instead, while we dislike the term applied, defendant's duties as a public employee are historically characterized as 'ministerial.' " *Id.* at 98, 484 S.E.2d at 427 (citing *Daniel v. City of Morganton*, 125 N.C. App. 47, 55, 479 S.E.2d 263, 268 (1997)).

Defendant contends that if animal control officers, prison guards, and social workers are public officials, surely teachers are as well. We disagree because there is a clear statutory basis for the grant of public official immunity in two of the three cases.

In *Kitchin v. Halifax Cty.*, 192 N.C. App. 559, 665 S.E.2d 760 (2008), *disc. rev. denied.*, 363 N.C. 127, 673 S.E.2d 135 (2009), this Court concluded that an animal control officer was a public official because

> [t]he position of animal control officer is created by statute, N.C. Gen. Stat. § 67-30, and is given authority to, *inter alia*, impound and euthanize dogs or cats, N.C. Gen. Stat. § 130A-192 and destroy stray dogs or cats in quarantine districts, N.C. Gen. Stat. § 130A-195. An animal control officer is a position created by statute, exercises a portion of sovereign power, and exercises discretion.

*Id.* at 568, 665 S.E.2d at 766.

In *Hobbs v. N.C. Dep't of Hum. Res.*, 135 N.C. App. 412, 520 S.E.2d 595 (1999), this Court recognized that statutory language "creates a structure under which department of social services staff members *may* function as public officers." *Id.* at 421, 520 S.E.2d at 602 (emphasis added). It did not hold that *all* social workers were public officials. There, a director of social services, a public official, had statutory authority to " 'delegate to one or more members of his staff the authority to act as his representative.' " *Id.* (quoting N.C. Gen. Stat. § 108A-14(b)). The issue before the Court was whether his staff members also were entitled to public official immunity. The Court held that the staff members were acting as public officials because they were acting for and representing the director of social services. *Id.* at 422, 510 S.E.2d at 602.

In the third case, *Price v. Davis*, 132 N.C. App. 556, 512 S.E.2d 783 (1999), this Court held that a correctional sergeant and an assistant superintendent at a correctional facility were "protected by public official immunity from individual liability for alleged violations of State statutes and prison regulations." *Id.* at 562, 512 S.E.2d at 787. This case did not discuss the *Isenhour* criteria. However, we note that North Carolina General Statutes, section 143B-260 creates the Department of Correction and section 143B-261 governs its duties, among them the duty to provide supervision of criminal offenders. This duty is delegated to prison guards, who exercise discretion in carrying it out.

Further, the Supreme Court of the United States has recognized that "the exercise of police authority calls for a very high degree of judgment and discretion[.]" *Foley v. Connelie*, 435 U.S. 291, 298, 55

L. Ed. 2d 287, 294 (1978). "The Supreme Court clearly and emphatically said that police 'are clothed with authority to exercise an almost infinite variety of discretionary powers' and are vested with 'plenary discretionary powers.' " *State v. Pendleton,* 339 N.C. 379, 386, 451 S.E.2d 274, 278-79 (1994), *cert. denied,* 515 U.S. 1121, 132 L. Ed. 2d 280 (1995) (quoting *Foley,* 435 U.S. at 297-98, 55 L. Ed. 2d at 293-94).

In *Kitchin, Hobbs,* and *Price,* the party being sued was either employed in a position created by statute, or delegated a statutory duty by a person or organization created by statute. Each defendant exercised discretion in carrying out the sovereign's power. Although teachers serve a vital role in the public education of the children of this state, they do not meet the test for public official immunity. *See Mullis,* 126 N.C. App. at 98, 484 S.E.2d at 427. Therefore, defendant is not entitled to such protection and her argument is without merit.

**[3]** Defendant also argues that the trial court erred in denying her summary judgment with respect to the federal claim against her. Defendant contends that as to the federal claim, she is entitled to qualified immunity to shield her from suit. In addition, she contends that plaintiffs failed to forecast evidence to support their section 1983 claim for supervisory liability. We disagree.

In *Farrell I,* Kathy Haehnel, the director of federal programs for the school board, successfully argued that she was entitled to qualified immunity in her individual capacity. *Farrell I,* 175 N.C. App. at 696, 625 S.E.2d at 133-34. As this Court stated, " '[q]ualified immunity protects public officials from personal liability for performing official, discretionary functions if the conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* at 697, 625 S.E.2d at 134 (quoting *Vest v. Easley,* 145 N.C. App. 70, 75, 549 S.E.2d 568, 573 (2001)).

In determining whether defendant may benefit from qualified immunity, many courts have adhered to the analysis set forth in *Saucier v. Katz,* 533 U.S. 194, 150 L. Ed. 2d 272 (2001), *overruled in part, Pearson v. Callahan,* 555 U.S. 223, 172 L. Ed. 2d 565 (2009). Although that analysis is no longer mandatory, *Pearson,* 555 U.S. at ——, 172 L. Ed. 2d at 576, *Pearson* "does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at ——, 172 L. Ed. 2d at 580. In following *Saucier,* we first determine "whether a constitutional right would have been violated on the facts alleged." *Saucier,* 533 U.S. at

200, 150 L. Ed. 2d at 281. "Next, assuming that the violation of the right is established, [we] consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable [public] officer that his conduct violated that right." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002) (citations omitted).

Under both the Fourteenth Amendment to the federal constitution and the "Law of the Land" clause of the state constitution, there is a liberty interest in the integrity of the human body. "Among the historic liberties so protected [by the Fifth and Fourteenth Amendments] was a right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security." *Ingraham v. Wright*, 430 U.S. 651, 673, 51 L. Ed. 2d 711, 731 (1977). The Fourth Circuit has recognized a student's substantive due process right to be free from excessive force "inspired by malice or sadism," that is disproportionate to the need presented and inflicts severe injury. *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980). *Hall* recognized

> the right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court. The existence of this right to ultimate bodily security—the most fundamental aspect of personal privacy—is unmistakably established in our constitutional decisions as an attribute of the ordered liberty that is the concern of substantive due process.

*Id.* at 613.

Here, the complaint alleged that Wohler's abusive actions toward Sean "constitute[] restraint and infliction of pain in violation of Plaintiff's liberty interest." Although " '[d]e minimis or trivial deprivations of liberty in the course of the disciplining of a student' " may not violate a student's constitutional rights, *Harris by Tucker v. County of Forsyth*, 921 F. Supp. 325, 331 (M.D.N.C. 1996) (quoting *Hassan v. Lubbock Independent School Dist.*, 55 F.3d 1075, 1081 (5th Cir.), *cert. denied*, 516 U.S. 995, 133 L. Ed. 2d 438 (1995), we do not believe that the conduct alleged in the instant case falls anywhere close to the "*de minimis*" or "trivial" range cited in *Hall*.

*W.E.T. v. Mitchell*, No. 1:06CV487, 2008 U.S. Dist. LEXIS 2036 (M.D.N.C. Jan. 10, 2008), involved a disabled student with severe asthma. *Id.*, 2008 U.S. Dist. LEXIS 2036, at *3, slip op. at 2. His special needs therapist "forcefully and maliciously" placed tape over his mouth when he would not stop talking, later forcefully removing it.

*Id.*, 2008 U.S. Dist. LEXIS 2036, at *3, *10, slip op. at 2, 7. The court determined that the complaint sufficiently alleged a violation of a constitutional right. *Id.*, 2008 U.S. Dist. LEXIS 2036, at *8-9, slip op. at 6. It further determined that this right was clearly established at the time of the violation such that the teacher should have known that her conduct was violative of the student's rights. *Id.*, 2008 U.S. Dist. LEXIS 2036, at *16, slip op. at 10. In contrast to *W.E.T.*, this case involves a *severely* disabled child whom it is alleged was *repeatedly* subjected to *abusive* behavior.

As to whether plaintiffs forecast evidence of supervisory liability, there are

> three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813, 130 L. Ed. 2d 24 (1994) (citations omitted).

The first element has three components:

> (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.

*Id.* (citations omitted). Although defendant asserts that she was not aware of Wohler's conduct toward Sean, plaintiffs have presented deposition testimony by several individuals that they told defendant about the conduct or that the conduct occurred in her "plain view."

As to the second element, "[a] supervisor's continued inaction in the face of documented widespread abuses, . . . provides an inde-

IN RE J.D.L.

[199 N.C. App. 182 (2009)]

pendent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." *Id.* (citations omitted). Here, notwithstanding defendant's knowledge of Wohler's conduct, defendant did nothing.

As to the third element, plaintiffs provided expert testimony that as a result of being force-fed, Sean suffered post-traumatic stress disorder, resulting in his requiring a feeding tube for several months. Accordingly, defendant's arguments to the contrary are without merit.

Because defendant's position is not considered to be one of a public official, she is not entitled to the benefits of public official immunity. Because Wohler's alleged conduct violates a clearly established constitutional right to bodily integrity, of which defendant would have known, she is not entitled to the benefits of federal qualified immunity. Therefore, the trial court did not err in denying defendant's motion for summary judgment based upon these immunities.

Affirmed.

Judges BRYANT and ELMORE concur.