KENNETH W. BAKER, JR., as Administrator of the Estate of KEITH ALLEN BAKER, Plaintiff

v.

CARSON H. SMITH, JR. in his official capacity as SHERIFF of PENDER COUNTY, GLENDA SIMPSON individually and officially, FIDELITY AND DEPOSIT COMPANY OF MARYLAND, as surety, NEW HANOVER REGIONAL MEDICAL CENTER and DR. PATRICK MARTIN, M.D., d/b/a PATRICK MARTIN & ASSOCIATES, Defendants

No. COA12-560

Filed 18 December 2012

**1. Immunity—public official—assistant jailers**

Assistant jailers are public officials entitled to immunity because they exercise the power of the State and carry out a statutory duty delegated by one whose position is constitutionally created, use discretion in doing so, and take an oath of office.

**2. Immunity—public official—assistant jailer—no allegation of corrupt activities**

Plaintiff did not overcome defendant assistant jailer's immunity, and the assistant jailer was entitled to summary judgment, where plaintiff did not allege that the actions of which plaintiff complained were malicious, corrupt, or outside the scope of her duties.

Appeal by defendant Glenda Simpson from order entered 2 February 2012 by Judge Jay D. Hockenbury in Superior Court, Pender County. Heard in the Court of Appeals 14 November 2012.

*Tin Fulton Walker & Owen, PLLC by S. Luke Largess, for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, LLP by Christopher J. Geis, Sonny S. Haynes and Kristen Y. Riggs, for defendant-appellant Glenda Simpson.*

*Edmond W. Caldwell, Jr. and Julie B. Smith, for North Carolina Sheriffs' Association.*

*North Carolina Prisoner Legal Services by Mary S. Pollard and Twiggs, Strickland & Rabenau, P.A by Jesse H. Rigsby, IV, for North Carolina Advocates for Justice.*

STROUD, Judge.

## I. Procedural History

On or about 21 May 2010, Kenneth Baker, Jr., acting as administrator for his brother's estate, ("plaintiff") filed a complaint in Pender County alleging that New Hanover Medical Center and Dr. Patrick Martin negligently released Keith Baker ("decedent") from involuntary commitment and thereby caused his death. The complaint also alleged that Pender County Sheriff Carson Smith and Assistant Jailer Glenda Simpson negligently supervised decedent while he was in their custody. Plaintiff filed suit against Sheriff Smith and Ms. Simpson in their official capacity and therefore also filed a claim against the Sheriff's bond held by Fidelity and Deposit Company of Maryland ("Fidelity") as surety. Plaintiff also filed suit against Officer Simpson ("defendant") in her individual capacity.

On 6 January 2012, defendants Smith, Simpson, and Fidelity moved for summary judgment on the grounds that they are immune from suit and that defendant Simpson is immune from individual liability as a public official. By order entered 2 February 2012, the trial court denied defendant Simpson's motion for summary judgment as to the claim against her in her individual capacity, concluding that she was not a public official, denied Fidelity's motion for summary judgment, and denied summary judgment for Sheriff Smith and Officer Simpson as to any amount less than the surety bond, but granted summary judgment to defendants Smith and Simpson in their official capacities as to any amount in excess of the bond. Defendant Simpson filed timely notice of appeal on 28 February 2012.

**BAKER v. SMITH**

[224 N.C. App. 423 (2012)]

## II. Factual Background

On 9 September 2006, Mr. Keith Baker was committed to New Hanover Regional Medical Center after having attempted suicide. The doctor who treated Mr. Baker released him the next day. Mr. Baker's wife had taken out a restraining order against him and filed charges alleging that he had threatened her with a knife. As a result, Mr. Baker was arrested upon being released from the hospital and transported to Pender County Jail.

Once in the jail, Mr. Baker acted erratically, frightening some of the other detainees, who alerted the jailers to his strange behavior. Defendant was the shift leader on duty that night, so she screened Mr. Baker for suicide risk. Mr. Baker explained his concerns about his legal troubles and the possibility of losing custody of his son. Officer Simpson then placed Mr. Baker in a holding cell under a suicide watch. The jailers gave him a tough, thick blanket and a suicide prevention vest. Defendant Simpson checked on Mr. Baker periodically throughout the night; the precise timing of these observations is a matter of dispute.[1] At around 2:30 A.M., Officer Simpson checked on Mr. Baker and saw that he had hanged himself in the holding cell using a strip of the blanket he had been given. Officer Simpson began CPR and called for an ambulance. When the Emergency Medical Technicians arrived, Mr. Baker was unresponsive but still had a heartbeat. Once transported to the hospital, the medical staff determined that Mr. Baker had suffered brain damage and would not recover. He was taken off life support and died shortly thereafter.

Plaintiff alleges that Defendant Simpson failed to properly supervise Mr. Baker that night and accuses her of altering the supervision logs after the fact to make it appear otherwise. Defendant contends that she properly supervised Mr. Baker that night in line with the local and State regulations, but that even if she was negligent, as a public official she is immune from suit against her in her individual capacity.

## III. Jurisdiction

[1] Defendant appeals from the trial court's order denying her motion for summary judgment as to the claim against her in her indi-

---

1. There was also evidence before the trial court at summary judgment regarding what information was received by jail staff upon decedent's transport to and arrival at the jail. Additionally, there was a great deal of evidence submitted by both parties concerning how defendant and the other jailers on duty supervised Mr. Baker on the night in question. This evidence, while clearly relevant to issues of negligence, is not relevant to the issue at hand, so we do not address it.

**BAKER v. SMITH**

[224 N.C. App. 423 (2012)]

vidual capacity. She filed timely notice of appeal to this Court. Defendant argues that the trial court erred in denying her motion for summary judgment because she is entitled to public official immunity.

> [W]e note that the trial court's order denying defendant's motion for summary judgment is interlocutory, and thus, not generally subject to immediate appeal. Orders denying summary judgment based on public official immunity, however, affect a substantial right and are immediately appealable. Thus defendant's appeal is properly before this Court.

*Fraley v. Griffin*, ___ N.C. App. ___, ___, 720 S.E.2d 694, 696 (2011) (citations and quotation marks omitted).

## IV. Standard of Review

> We review a trial court order granting or denying a summary judgment motion on a *de novo* basis, with our examination of the trial court's order focused on determining whether there is a genuine issue of material fact and whether either party is entitled to judgment as a matter of law. As part of that process, we view the evidence in the light most favorable to the nonmoving party.

*Beeson v. Palombo*, ___ N.C. App. ___, ___, 727 S.E.2d 343, 346-47 (2012).

## V. Public Official Immunity

The only question presented on appeal is whether defendant, an assistant jailer, qualifies as a public official entitled to immunity from suit in an individual capacity.[2] This question is one of first impression in North Carolina.

> It is settled in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto. An employee, on the other hand, is personally liable for negligence in the performance of his or her duties proximately causing an injury. Public officials receive immunity because it would be difficult to find

---

2. The question of whether defendant or any of her co-defendants were negligent is not before this Court.

those who would accept public office or engage in the administration of public affairs if they were to be personally liable for acts or omissions involved in exercising their discretion.

*Isenhour v. Hutto*, 350 N.C. 601, 609-10, 517 S.E.2d 121, 127 (1999) (citations and quotation marks omitted).

In distinguishing between a public official and a public employee, our courts have held that (1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties. Additionally, an officer is generally required to take an oath of office while an agent or employee is not required to do so.

*Fraley*, ___ N.C. App. at ___, 720 S.E.2d at 696 (citation, quotation marks, and brackets omitted); *see also Isenhour*, 350 N.C. at 610, 517 S.E.2d at 127 (describing the above elements as "basic distinctions between a public official and a public employee").

The parties agree that a chief jailer is clearly entitled to public official immunity. *See Slade v. Vernon*, 110 N.C. App. 422, 424, 428, 429 S.E.2d 744, 747 (1993) (applying public official immunity to a sheriff and a chief jailer). The question here is whether an *assistant* jailer is entitled to the same immunity.

Defendant argues that she should be considered in the same light as a deputy sheriff or a prison correctional officer in the Department of Correction (now the Division of Adult Correction, part of the N.C. Department of Public Safety), who both have public official immunity. Plaintiff argues that assistant jailers hold a position not created by statute with much less discretion and responsibility than law enforcement officers who have the general power of arrest. Because no case has specifically decided this question, we must apply the elements laid out in *Isenhour* and *Fraley* to determine whether assistant jailers qualify as public officials entitled to immunity.

Defendant argues that as a law enforcement officer, she is automatically entitled to public official immunity and we need not address the factors as stated in *Isenhour* and *Fraley*, but many of the cases upon which she relies fail to address public official immunity. It is true that our Supreme Court has called an assistant jailer a "law

enforcement officer" for purposes of deciding whether a defendant committed assault with a firearm upon a law enforcement officer, see *State v. Dix*, 282 N.C. 490, 491, 502, 193 S.E.2d 897, 898, 904 (1973), and we have said that law enforcement officers are public officials, *State ex rel. Jacobs v. Sherard*, 36 N.C. App. 60, 65, 243 S.E.2d 184, 188, *disc. rev. denied*, 295 N.C. 466, 246 S.E.2d 12 (1978) ("defendants are law enforcement officers and as such are 'public officers' "), but these cases do not address the issue of public official immunity. *In State ex rel. Jacobs*, contrary to defendant's argument, we did not declare that every person employed by a law enforcement agency is automatically entitled to public official immunity. *See id.* Rather, we simply restated that police officers are so entitled. *See id.* at 61, 65, 243 S.E.2d at 186, 188. Further, although defendant cites multiple cases in which either this Court or our Supreme Court have referred to jailers as public officers, we have never addressed this question in the context of public official immunity.

Therefore, as with any other public position for which this Court or our Supreme Court has not addressed the question of public official immunity, we must consider the position under the elements of one entitled to public official immunity as outlined in *Isenhour* and *Fraley*. *See Isenhour*, 350 N.C. at 610, 517 S.E.2d at 127; *Fraley*, ___ N.C. App. at ___, 720 S.E.2d at 696.

A. Position created by statute

Defendant first argues that the position of assistant jailer is created by statute for purposes of public official immunity. We agree.

A position is considered "created by statute" when "the officer's position ha[s] a clear statutory basis *or the officer ha[s] been delegated a statutory duty by a person or organization created by statute*" or the Constitution. *Fraley*, ___ N.C. App. at ___, 720 S.E.2d at 696 (citation and quotation marks omitted) (emphasis added). The positions of sheriff and jailer are positions of common law origin whose powers and responsibilities are defined both by statute and by the common law. *Gowens v. Alamance County*, 216 N.C. 107, 109, 3 S.E.2d 339, 340 (1939). The position of sheriff is explicitly created by our Constitution. N.C. Const. art. VII, § 2.

Plaintiff stresses that because the position of jailer "is one of common law origin [which] has existed from time immemorial" it could not have been created by statute. *Gowens*, 216 N.C. at 109, 3 S.E.2d at 340. Yet this court has also noted that despite its common law origins, "the duties of the jailer are those prescribed by statute

*and* those recognized at common law." *State v. Jones*, 41 N.C. App. 189, 190, 254 S.E.2d 234, 236 (1979) (emphasis added). The positions of sheriff and deputy are of similar common law origins, yet both are considered public officials for purposes of immunity. *See Messick v. Catawba County*, N.C., 110 N.C. App. 707, 718, 431 S.E.2d 489, 496 (1993). Thus, the common law origin of a position is not dispositive as to whether it has been "created by statute."[3]

N.C. Gen. Stat. § 162-22 establishes that sheriffs have the duty to operate the jail and the power to "appoint[] the keeper thereof." N.C. Gen. Stat. § 162-22 (2011). Plaintiff and Advocates for Justice, in an amicus brief, argue that this statute only refers to a single designee—the chief jailer—not to assistant jailers. Defendant counters that the term "the keeper" of the jail must be read to include assistant jailers.

Regardless of whether we read § 162-22 to include assistant jailers, that statute establishes the duty of the sheriff to operate the jail. N.C. Gen. Stat. § 162-24 permits a sheriff to "appoint a deputy *or employ others to assist him in performing his official duties*." N.C. Gen. Stat. § 162-24 (2011) (emphasis added). Read together with § 162-22, it is clear that the legislature intended to permit the sheriff to "employ others"—plural—to help perform his official duties, including his duty to take "care and custody of the jail." N.C. Gen. Stat. § 162-22.

That statutory duty defines the role of an assistant jailer. Assistant jailers are "charged with the care, custody, and maintenance of prisoners." *State v. Shepherd*, 156 N.C. App. 603, 607, 577 S.E.2d 341, 344 (2003). The same article that vests the sheriff and chief jailer with their powers also vests them with the authority to appoint subordinates, such as assistant jailers. *See* N.C. Gen. Stat. § 162-24. Our legislature, in a different article, described detention officers, i.e. jailers, as "[a] person, who through the special trust and confidence of the sheriff, has been appointed as a detention officer by the sheriff." N.C. Gen. Stat. § 17E-2 (2011). Indeed, the jail cannot operate without "custodial personnel" to "supervise" and "maintain safe custody and control" of the prisoners. N.C. Gen. Stat. § 153-224(a) (2011) ("No person may be confined in a local confinement facility unless custodial personnel are present and available to provide con-

---

3. In fact, a tremendous amount of our law has common law origins but has later been adopted or modified by statute. *See, e.g., State v. Weaver*, 359 N.C. 246, 251-55, 607 S.E.2d 599, 602-04 (2005) (discussing common law origins and later statutory developments of the crime of embezzlement).

tinuous supervision in order that custody will be secure . . .")[4] Thus, assistant jailers are delegated the statutory duty to take care of the jail and the detainees therein by the sheriff — a position created by our Constitution. N.C. Const. art. VII, § 2. We therefore conclude that assistant jailers meet the first element of a public official for purposes of immunity. *See Fraley*, ___ N.C. App. at ___, 720 S.E.2d at 696 (citation and quotation marks omitted).

B.  Exercise of sovereign power

Plaintiff does not contest that assistant jailers exercise sovereign power. Although jailers are generally not deputies with the power of arrest, the jailer's authority is similarly derived from the sovereign powers delegated to the sheriff. N.C. Gen. Stat. § 162-22 (giving sheriff power to appoint jailer); *see Meeds v. Carver*, 30 N.C. 218, 220, 8 Ired. 298, 301 (1848) ("the gaoler is the sheriff's deputy . . . a detention by the gaoler is justified, if one by the sheriff himself would have been by the same process."). Assistant jailers exercise a portion of this sovereign power by detaining misdemeanants and those awaiting trial in the jail.

C.  Discretion

Defendant argues that she exercises discretion in the performance of her duties. Plaintiff counters that the extensive regulations and jail protocol dictate her actions, making her position ministerial.

> [I]mmunity has never been extended to a mere employee of a government agency . . . since the compelling reasons for the nonliability of a public officer, clothed with discretion, are entirely absent. Of course, a mere employee doing a mechanical job . . . must exercise some sort of judgment in plying his shovel or driving his truck—but he is in no sense invested with a discretion which attends a public officer in the discharge of public or governmental duties, not ministerial in their character.

*Miller v. Jones*, 224 N.C. 783, 787, 32 S.E.2d 594, 597 (1945). "Discretionary acts are those requiring personal deliberation, decision and judgment; duties are ministerial when they are absolute, certain, and imperative, involving merely the execution of a specific duty arising

---

4. We note that the statutory duty imposed by § 153-224(a) refers to "custodial . personnel", which, by its plain meaning, encompasses detention officers beyond the chief jailer.

from fixed and designated facts." *Meyer v. Walls*, 347 N.C. 97, 113, 489 S.E.2d 880, 889 (1997) (citations and quotation marks omitted).

Plaintiff argues that *Fraley v. Griffin* is controlling on this point. In *Fraley*, this Court held that an Emergency Medical Technician ("EMT") is not a public official entitled to immunity.[5] *Fraley*, ___ N.C. App. at ___, 720 S.E.2d at 697. The plaintiff in *Fraley* sued an EMT employed by Orange County for wrongful death. *Id.* at ___, 720 S.E.2d at 695-96. The defendant claimed that he was a public officer, in part because he exercised discretion. *Id.* at ___, 720 S.E.2d at 697. The evidence showed that an EMT has fairly little discretion because he must follow detailed treatment protocols and must seek approval from a doctor to deviate from those protocols. *Id.* We therefore concluded that an EMT holds a ministerial position. *Id.*

Assistant jailers do not set policy like the chief jailer or sheriff does. Further, they are subject to detailed regulations and protocol issued by the chief jailer, the county sheriff, and the State. In the context of suicide watch protocol, plaintiff's argument under *Fraley* is quite convincing, for the actions of the assistant jailer are mandated to within a fifteen minute interval—a level of detail not found in the EMT regulations at issue in *Fraley. See id.* Yet we do not consider just one duty or one aspect of the assistant jailer's duties in deciding whether she exercises discretion. Rather, we must consider her duties as a whole.

---

5. We also note that *Fraley* is distinguishable as it first held that the position of EMT is not created by statute (unlike the positions of jailer or sheriff) and then held that the lack of discretion was also a basis for its holding that EMTs do not have public officer immunity. *Fraley*, ___ N.C. App. at ___, 720 S.E.2d at 696-97. Although the cases are not entirely clear on whether all three of the *Isenhour* factors must be present for public officer immunity to exist (an oath of office is not absolutely necessary), the better view seems to be that all three must exist, and if so, *Fraley*'s holding that an EMT does not exercise discretion could be considered dicta, since the Court had already eliminated the first factor by holding that the position of EMT was not created by statute. *But see Murray v. County of Person*, 191 N.C. App. 575, 579-80, 664 S.E.2d 58, 61-62 (2008) (addressing all three elements in finding no public officer immunity for Registered Sanitarians). Thus, the determination that the EMT does not exercise discretion was not necessary for the *Fraley* holding. "Language in an opinion not necessary to the decision is obiter dictum and later decisions are not bound thereby." *Trustees of Rowan Tech. College v. Hammond Assoc.*, 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985). *Fraley* also does not address the element of "exercise of sovereign power" at all, despite the fact that the defendants in that case argued that EMTs do exercise a portion of the sovereign power by carrying out the governmental duty of providing emergency medical transport and care. *Fraley*, ___ N.C. App. at ___, 720 S.E.2d at 696-97.

Although detailed, the regulations concerning how an assistant jailer is to manage detainees in general are broader than those concerning the management of those who are potentially suicidal. The State requires each jail to have an operations manual which covers, among other topics, inmate rules and discipline, administration, sanitation, emergency plans, and grievance procedures. 10A N.C. Admin. Code § 14J.0203 (1990).[6] The regulations and the Pender County Jail's official policy mandate that the jailer check on the detainees at least twice per hour. The precise schedule for checking on the detainees, however, is largely left to the discretion of the jailer on duty. Indeed, the checks are supposed to be irregular. Similarly, although assistant jailers are required to record and report unusual activity to the chief jailer or sheriff, decisions on which inmates to screen for suicide watch and how to immediately deal with troublesome detainees are largely left to the discretion of the individual assistant jailer.

Further, although plaintiff asserts that the discretion of an assistant jailer is like that of an EMT and Sheriff Smith explained in his deposition that the duties of an assistant jailer are different from and more limited in scope than those of a deputy sheriff, it is difficult to imagine that they are much, if at all, different from those of a prison guard.

In *Price v. Davis*, we held, without analysis, that the defendants in that case—a correctional sergeant and an assistant superintendent of the state prison—were entitled to public official immunity. *Price v. Davis*, 132 N.C. App. 556, 562, 512 S.E.2d 783, 787 (1999).[7] In *Farrell*, we explained the holding in *Price* by noting that the power of the Department of Correction to supervise inmates is delegated to prison guards, "who exercise discretion in carrying it out." *Farrell ex rel.*

---

6. The general protocol for supervision of inmates in Pender County Jail mirrors the language in the Administrative Code.

7. The absence of detailed analysis of immunity in *Price* is not surprising, as it was a *pro se* appeal based upon an inmate's claim that a correctional sergeant wrongfully "confiscated twenty-six solid-barrel ball point pens, nine highlighters, and a padlock from plaintiff" and that an assistant superintendent had "refused to permit plaintiff to receive various legal texts which had been brought to him by a visitor." *Price*, 132 N.C. App. at 557-58, 512 S.E.2d at 785. It is without question that plaintiff's loss in this case—Mr. Baker's tragic death—was infinitely greater that the deprivation of some office supplies. In addition, the arguments presented to this Court by the parties and *amici* on both sides are almost certainly substantially more skilled and thorough—and thus of more assistance to the Court—than those presented by a *pro se* appellant.

*Farrell v. Transylvania County Bd. of Educ.*, 199 N.C. App. 173, 178, 682 S.E.2d 224, 229 (2009).[8]

Jailers are similarly delegated the sheriff's power to detain and exercise discretion in carrying out that power. The chief jailer has a "duty to investigate or 'check' on the prisoners in his charge, and any disturbance on the premises." *State v. Jones*, 41 N.C. App. 189, 190, 254 S.E.2d 234, 236 (1979). In the absence of the chief jailer, this duty is delegated to the assistant jailers.

Although jailers are subject to detailed regulations, as EMTs are, their duties are far more similar to those of a prison guard than they are an EMT. Both jailers and prison guards are "charged with the care, custody and safekeeping of inmates." *Shepherd*, 156 N.C. App. at 607, 577 S.E.2d at 344 (quotation marks omitted). Further, like county jails, prisons are subject to detailed regulations and policies. *See, e.g.*, North Carolina Dep't of Corr., Div. of Prisons, Policy and Procedures Manual F.1600 (22 March 2012), *available at* http://www.doc.state.nc.us/dop/policy_procedure_manual/F1600.pdf (last visited 15 November 2012) (establishing Division of Prisons policy for the management of security posts and supervision of inmates). An assistant jailer, like a bailiff, chief jailer, or prison guard is "charged with the care, custody and safekeeping of anyone assigned to him, any inmate that might be in [the government's] custody," *Shepherd*, 156 N.C. App. at 607, 577 S.E.2d at 344 (quotation marks omitted). We see no reason to differentiate between those "charged with the care, custody and safekeeping of" detainees in the county jail and those "charged with the care, custody and safekeeping" of inmates in state prisons. *Id.* Therefore, we hold that assistant jailers exercise discretion to carry out their duties for purposes of public official immunity.

D. Oath of Office

Finally, although not required to be considered a public official, public officials often take an oath of office. *See Fraley*, ___ N.C. App.

---

8. Plaintiff points out that the defendants in *Price* were not entry-level correctional officers, but supervisory officers. In our analysis in *Farrell*, however, we did not distinguish between a correctional sergeant and other correctional officers of greater or lesser rank. *See Farrell*, 199 N.C. App. at 178, 682 S.E.2d at 229 (observing that the custodial duty of the Department of Correction is "delegated to *prison guards*" (emphasis added)). The discussion of the importance of supervisory authority in *Farrell* is limited to the analysis of the defendant's claim of "qualified immunity" for the federal claim under 42 U.S.C. § 1983, an issue which is not raised by this case. *Id.* at 181-82, 682 S.E.2d at 230-31.

at ___, 720 S.E.2d at 696. Consistent with our analysis above, assistant jailers take an oath of office, just as sheriffs' deputies do. The taking of an oath of office solemnizes the trust and discretion vested in an assistant jailer as one charged with the sheriff's statutory and common law duty to keep the jail.

E.  Policy Considerations

Both parties and the *amici* discuss the policy implications of our holding in the present case. Plaintiffs highlight the tragedy of suicides in our jails and prisons, *see generally* Bureau of Justice Statistics, U.S. Dep't of Justice, Suicide and Homicide in State Prisons and Local Jails (August 2005), and argue that immunity would make jailers unaccountable. Defendants counter that if we were to deny assistant jailers immunity that people would be less likely to accept an already dangerous and underappreciated job. *See State v. Primes*, 314 N.C. 202, 211, 333 S.E.2d 278, 284 (1985) (observing that "[a] detention facility is a unique place fraught with serious security dangers." (quoting *Bell v. Wolfish*, 441 U.S. 520, 559, 60 L.Ed.2d 447, 481 (1979))).

The policy concerns of both parties are valid and of great importance, but we recognize that our legislature has attempted to balance these interests through the extensive statutory and regulatory framework surrounding the operation of the confinement facilities in our State, *see* 10A N.C. Admin. Code § 14J (containing regulations for county jails), and by providing for a waiver of immunity through the sheriff's bond, *see Smith v. Phillips*, 117 N.C. App. 378, 381-84, 451 S.E.2d 309, 312-14 (1994) (discussing waiver of immunity through the purchase of insurance and actions on a sheriff's bond), *and* N.C. Gen. Stat. § 58-76-5 (2011) (providing for civil actions on an official bond).

Defining assistant jailers as public officials entitled to immunity does not undermine this framework; nor does it lead to unaccountable jailers, given the extensive regulations, the ability of injured parties to sue on the sheriff's bond, the potential criminal penalties for jailers who injure those in their care, *see* N.C. Gen. Stat. § 162-55 (2011), as well as internal discipline for those jailers who violate policies and procedures.

F.  Conclusion

Based on the *Isenhour* elements, and for the reasons outlined above, we hold that assistant jailers are public officials entitled to immunity because they exercise the power of the State and carry out a statutory duty delegated by one whose position is constitutionally

**BAKER v. SMITH**

[224 N.C. App. 423 (2012)]

created, use discretion in doing so, and as with other public officials, take an oath of office.

### VI. Malice, Corruption, and Scope of Authority

**[2]** "As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984) (citation and quotation marks omitted).

On appeal, plaintiff alleges that defendant altered the logbook of her supervision rounds to make it appear that she was in compliance with regulations and argues that this act constitutes malice or corruption and was an action outside the scope of her duties. Plaintiff did not allege in her complaint, however, that defendant acted maliciously, corruptly, or outside the scope of her official authority. Therefore, plaintiff has failed to allege an element necessary to overcome defendant's affirmative defense of public official immunity. As a result, we hold that defendant is entitled to summary judgment and reverse the trial court's order to the contrary. *See Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 210, 646 S.E.2d 550, 554 (2007) (stating that the movant is entitled to summary judgment "if the non-moving party is unable to overcome an affirmative defense offered by the moving party" (citation omitted)).

### VII. Conclusion

We hold that Officer Simpson is entitled to public official immunity as an assistant jailer in Pender County. We further hold that plaintiff is unable to overcome defendant's immunity as he has failed to allege that the actions for which plaintiff claims Officer Simpson is liable were malicious, corrupt, or outside the scope of her duties. Accordingly, we reverse the trial court's order denying defendant's motion for summary judgment as to the claim against her in her individual capacity and remand to the trial court with instructions to enter an order granting defendant's motion for summary judgment as to that claim.

REVERSED and REMANDED.

Judges ELMORE and BEASLEY concur.